# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-2251

KATHLEEN BRISCOE, on behalf of
NELSON TAYLOR, deceased,

*Plaintiff-Appellee*,

*v.*

JO ANNE B. BARNHART,
Commissioner of Social Security,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 2762—**Morton Denlow**, *Magistrate Judge.*

ARGUED JANUARY 6, 2005—DECIDED SEPTEMBER 23, 2005

Before MANION, WOOD, and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* This is a somewhat unusual Social
Security appeal. After an Administrative Law Judge (ALJ)
rejected Nelson Taylor's application for disability benefits
under Title II of the Social Security Act, 42 U.S.C. § 423, he
appealed and persuaded the district court to remand the
case for an award of benefits. The Commissioner of the
Social Security Administration is thus the appellant before
us; she argues that the district court erred in its conclusion
that the ALJ's decision rejecting Taylor's application was
not supported by substantial evidence. We conclude that the

record permits neither rejection of Taylor's claim nor an immediate award of benefits, and we thus remand the case to the agency.

**I**

Taylor (who has since passed away and is now represented by Kathleen Briscoe, his sister) applied for Supplemental Social Security Income (SSI) benefits under Title XVI of the Social Security Act (SSA) on May 1, 1993. He was awarded benefits effective the date of his application. On December 11, 1996, at the age of 55, he filed an application for disability insurance benefits (DIB) under Title II of the SSA, 42 U.S.C. § 423, claiming disability as a result of poor circulation in the legs and alleging an onset date of March 1, 1987, the date he was last employed. He claimed that he had a fifth grade education, he did not read or write well, and he could not understand a lot of words when attempting to read a newspaper. He worked as a forklift and machine operator for a steel mill for ten years until 1986, then as a forklift operator for the Leaf Brand Company. He stopped working on March 1, 1987, claiming that the repetitive foot movement required in driving a forklift caused him significant leg pain.

Taylor's application was denied initially and upon reconsideration, prompting him to request a hearing before an ALJ. On March 18, 1998, ALJ B. Carlton Bailey, Jr., held a hearing at which Taylor and a medical expert, Dr. David Abramson, testified. Because Taylor was already receiving SSI benefits and his insured status for Title II disability benefits expired on March 31, 1991, the ALJ acknowledged that the only issue to be resolved was when Taylor became disabled—the so-called onset date. (In order to be entitled to DIB, an individual must establish that the disability arose while he or she was insured for benefits. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.131;

*Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997)).

At the hearing, Taylor testified that by early 1987, his impairments were so severe that he was only able to walk approximately one-half block before his legs would cramp, forcing him to rest and massage them. He also testified that the pain prevented him from helping with household chores, visiting friends, or taking part in his favorite pastimes. In late 1993 or early 1994 (after the expiration of his insured status), Taylor developed a leg ulcer that did not heal. By 1994, he was able to walk only ten or twelve steps without having to sit down. After undergoing femoral bypass surgery in 1994 to remove a blockage in a main artery, the pain in his legs lessened somewhat and he was able to walk about two blocks. Shortly thereafter, he underwent another operation, this time to alleviate stomach pain. Following this procedure, his doctor instructed him to refrain from lifting more than twenty pounds.

The evidence submitted with Taylor's claim included medical records covering the period prior to the expiration of his insured status. Between 1985 and 1990, Taylor visited the Chicago Hamblin Medical Center on several occasions. On December 1, 1986, he complained of nausea and dizziness and was referred for testing to rule out the possibility of an intra-abdominal tumor. His treatment notes on December 15, 1986, although mostly illegible, indicated that Taylor was to be released to return to work on January 5, 1987. Notes taken on January 6, 1989, reported rectal bleeding, weight loss, and dizziness. Taylor next saw a doctor on January 7, 1990, for bilateral leg cramps after walking a block or so. The doctor prescribed Trental to treat his leg pain. February 5, 1991, medical notes indicated that Taylor again complained of leg pain on this visit. The doctor did not conduct any tests to explore what was causing this condition; he simply instructed Taylor to continue treatment at home.

Taylor had continual health problems from mid-1993 forward. He went to the doctor on May 28, 1993, after the expiration of his insured status, complaining of back pain and pain in both legs and the inability to walk more than a block without resting; his weight had also dropped 21 pounds. On a January 7, 1994, visit, Taylor reported pain in the left leg, and the doctor's notes recorded poor peripheral pulses. A few days later, on January 14, 1994, he returned to the medical center. Notes from that visit report a history of alcoholism and peripheral neuropathy. Taylor was hospitalized for the non-healing ulcer in the left leg, abdominal aorta occlusion, obstructive chronic bronchitis, and cellulitis of the leg from June 14 to July 1, 1994. A June 17, 1994, consultation report for vascular surgery indicated a long-history of claudication pain in the lower extremities, with severe hip pain lasting six to seven months, and a non-healing ulcer in the left leg. On June 20, his aorto-femoral angiograms revealed a complete occlusion in an artery for which he underwent bypass surgery to remove the blockage and to repair blood vessels on June 24.

The medical expert, Dr. Abramson, opined that Taylor had disabling conditions as of 1994, including severe arteriosclerosis obliterans, a block in the abdominal aorta, and intermittent claudication, which causes pain when the muscles are being exercised. The doctor was unsure, however, how long the conditions had existed. He explained that these are slowly progressing ailments, in some cases taking three years or longer to develop and in others a shorter period of time, depending on an individual's rate of cholesterol metabolism. Dr. Abramson believed that the only way to establish an onset date would be to review the objective data from treatment tests conducted during the qualifying time period (that is, from the claimant's alleged onset date until the last date insured) for references to the absence or reduction of pulses or whether signs of arteriosclerosis were present in the lower extremities. He sug-

gested that the 1993 SSI application file might provide some of this information.

After the hearing, the ALJ found that Taylor did not have a severe impairment on or before March 31, 1991, when his insured status expired and thus he was not entitled to DIB. The ALJ's decision became the final decision of the Commissioner on July 28, 2000, when the Appeals Council denied Taylor's request for review.

Taylor subsequently filed a complaint in district court seeking review of the agency's denial of benefits pursuant to 42 U.S.C. § 405(g). On September 6, 2001, Magistrate Judge Arlander Keys reversed the ALJ's decision and remanded the case for further proceedings. See *Taylor v. Massanari*, No. 00 C 5643, 2001 WL 1035286, at *9 (N.D. Ill. Sept. 7, 2001). Judge Keys found that the ALJ's decision was not supported by substantial evidence because it failed to apply Social Security Ruling 83-20 (SSR 83-20) when it rejected Taylor's alleged onset date without determining whether that date was consistent with the available medical evidence. He explained that under SSR 83-20, the ALJ cannot reject the claimant's testimony solely on the basis that there was no objective proof of his alleged onset date. Judge Keys also found that the ALJ did not fully develop the record, because he neither consulted Taylor's 1993 SSI application file nor explained his reasons for proceeding without it.

Taylor died on June 7, 2002 (apparently of lung cancer), but applications under Title II do not automatically expire upon the death of a claimant if a party in interest (including a beneficiary) is able to maintain the integrity of the application. See 20 C.F.R. § 404.503. On remand, ALJ Bailey held a supplemental hearing on November 1, 2002, to receive the testimony of Lola Lawe-Taylor, Taylor's domestic partner of seventeen years, Dr. Ashok Jilhewar, a medical expert, and Richard Hamersma, a vocational

expert.

Lawe-Taylor testified that Taylor stopped working in 1987 because he could no longer perform his job as a forklift operator and that he used to come home and complain about leg cramps. He had cramps in his leg about every half-hour both day and night, and he woke up frequently during the night because of the pain. By her account, the cramps grew worse in August 1991, and as a result Taylor ceased driving.

Dr. Jilhewar opined that Taylor had disabling conditions on January 7, 1994, based on the pulse measurements taken that day, but he was unsure how long these conditions existed. He stated that he did not know whether the earlier records' indication of normal extremities were based on pulse measures or purely subjective observations. He also agreed with Dr. Abramson's determination that Taylor had longstanding claudication of the lower extremities, and that although it was possible that this condition had existed in 1987, he could not tell from the record whether Taylor had this condition prior to January 7, 1994. Dr. Jilhewar also admitted that the drug the doctor prescribed to Taylor on January 7, 1990, Trental, was strong evidence that the doctor was thinking of a peripheral vascular disease but again, he could not offer an opinion about the severity of the condition without pulse measurements. Finally, Dr. Jilhewar was unable to comment on how much of a physical limitation Taylor had after January 7, 1990, although he did draw the inference from the data that Taylor was affected by that time.

On January 7, 2003, the ALJ issued his decision, repeating his previous conclusion that the evidence did not show that Taylor was disabled prior to January 7, 1994. He found that although Taylor's impairments were severe enough to prevent him from performing any of his past relevant work prior to March 31, 1991, as of that date Taylor still had the residual functional capacity (RFC) to perform a significant

range of light work in the national economy. He therefore concluded that Taylor was ineligible for DIB.

Briscoe, Taylor's sister and a party in interest, sought judicial review of the ALJ's decision and the case was assigned to Magistrate Judge Morton Denlow. (For ease of reference, we continue to refer to Taylor as the plaintiff throughout this opinion.) Judge Denlow reversed the ALJ's denial of benefits, finding that it was not supported by substantial evidence. At the outset, he noted that the ALJ had failed to follow Judge Keys's instructions to apply SSR 83-20, or to discuss the 1993 SSI file or to explain why the ALJ proceeded without the file. In addition, the ALJ's decision was reversible on a number of other grounds. The ALJ failed to apply the analysis mandated by SSR 83-20 to determine the onset date of disability. He also failed to fulfill his obligation to build a full record, because he did not discuss the 1993 SSI file or explain why he proceeded without the file. Nor did he consider Taylor's testimony from the 1998 hearing or explain why he rejected that testimony. Judge Denlow also found that the ALJ should not have rejected Lawe-Taylor's testimony. As a remedy, the court remanded the case for an award of benefits.

The Commissioner appeals, arguing that the ALJ's decision was supported by substantial evidence. In the alternative, she argues that the district court erred in awarding Taylor disability benefits rather than issuing a remand for further proceedings.

**II**

"The standard of review in disability cases limits this court as well as the district court to determining whether the final decision of the [Commissioner] is both supported by substantial evidence and based on the proper legal criteria." *Sheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (quotation marks omitted). The court will "conduct a

critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quotation marks omitted). In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review. See *Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994).

In order to qualify for disability benefits, a claimant must be found "disabled," under the SSA. 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five. The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner. See *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The ALJ found that Taylor's impairments met regulation listings on January 4, 1994, and that Taylor was

disabled as of that date. Unfortunately, that date is well beyond the expiration of his insured status, and thus this finding did not in itself resolve the case. The ALJ therefore properly turned to the question whether Taylor's impairments rendered him disabled prior to March 31, 1991. Where, as here, a claimant is found disabled but it is necessary to decide whether the disability arose at an earlier date, the ALJ is required to apply the analytical framework outlined in SSR 83-20 to determine the onset date of disability. See *Perkins v. Chater*, 107 F.3d 1290, 1295 (7th Cir. 1997); *Lichter v. Bowen*, 814 F.2d 430, 434-37 (7th Cir. 1987).

SSR 83-20 defines the onset date of disability as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20 at *1. In the case of slowly progressive impairments, SSR 83-20 does not require an impairment to have reached the severity of an impairment listed in the regulations, as required under step three, but "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death." SSR 83-20 at *3; see *Armstrong v. Comm'r*, 160 F.3d 587, 590 (9th Cir. 1998) (stating that the onset date is determined by the date when the impairment became disabling and not just present); *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989) (same).

The ALJ did not refer to SSR 83-20 specifically in his decision, but this omission by itself is not reversible error. See *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). We must determine whether the ALJ nevertheless properly applied the requisite analysis. Our review of the decision leads us to conclude that he did not.

After finding that Taylor was disabled as of January 4,

1994, the ALJ proceeded to consider what Taylor could do before that date. He concluded that Taylor retained the residual functional capacity to:

> lift/carry 10 pounds frequently and 20 pounds occasionally, push/pull 10 pounds frequently and 20 pounds occasionally, sit 6 hours in an 8-hour day, walk 6 hours in an 8-hour day, stand 6 hours in an 8-hour day, avoid all exposure to temperature extremes, avoid concentrated exposure to dust/fumes, and no commercial driving.

Contrary to SSR 96-8p, however, the ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision. See SSR 96-8p at *7 ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts.").

Worse than that, the record contains no evidence that would support the ALJ's description of Taylor's pre-1994 RFC. Dr. Jilhewar disclaimed the ability to infer the limits of Taylor's residual functional capacity prior to January 4, 1997. In fact, he stated that "[t]here was no establishment of any restrictions, or any [e]ffect on the residual functional capacity, until 1/7/90, and then after 1/7/90, there was a limitation, but how much, . . . I do not know the answer."

In opining that Taylor's impairments first met regulation listing severity on January 7, 1994, Dr. Jilhewar relied solely on the first recording of poor peripheral pulses in the medical records. But he also stated that he was unable to infer from the record how long Taylor had met listing severity because the earlier records did not contain objective evidence of the progression of Taylor's impairments. If the ALJ based his RFC determination on this first date of diagnosis, it is contrary to SSR 83-20 which holds that "in the case of slowly progressive impair-

ments, it is not necessary for an impairment to have reached listing severity (i.e. be decided on medical grounds alone) before onset can be established." SSR 83-20 at * 2; see *Lichter*, 814 F.2d at 435 (holding that under SSR 83-20, the ALJ may not rely on the first date of diagnosis simply because an earlier diagnosis date is unavailable).

Under SSR 83-20, an ALJ must consider three factors when determining the onset date of disabilities of a nontraumatic origin: (1) the claimant's alleged onset date; (2) the claimant's work history; and (3) medical and all other relevant evidence. See SSR 83-20 at *2. The date that the claimant alleges as an onset date should be the starting point of the analysis, and that date "should be used if it is consistent with all the evidence available." *Id.* at *3. The day when the impairment caused the individual to stop work is also important. See *id.* Nevertheless, medical evidence is "the primary element in the onset determination," and the date chosen "can never be inconsistent with the medical evidence of record." *Id.* at *2, *3. This does not mean that a claim is doomed for lack of medical evidence establishing the *precise* date an impairment became disabling. In such cases, the ALJ must "infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process" and should seek the assistance of a medical expert to make this inference. *Id.* at *2. Where no reasonable inference is possible based on the available evidence and additional medical evidence is not available, "it may be necessary to explore other sources of documentation . . . from family members, friends, and former employees to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition." *Id.* at *3.

While the ALJ did consult with medical experts in attempting to infer an onset date, he did not follow through with the instructions given in SSR 83-20 after

he determined that no reasonable inference could be drawn from the medical records. Although both Drs. Jilhewar and Abramson indicated that the lack of objective medical tests prior to the expiration of Taylor's insured status was the basis for their inability to establish an onset date during this time, neither one dismissed the possibility that Taylor's disabling condition existed prior to the expiration of his insured status. The ALJ acknowledged that the medical evidence was inconclusive. Rather than explore other sources of evidence, as SSR 83-20 requires, the ALJ drew a negative inference at that point.

The Commissioner argues that there were no other credible supporting evidence for the ALJ to review because he found that Lawe-Taylor's testimony was not credible and Taylor failed to present other potential witnesses such as his former employer, siblings, friends, or his treating physician. This underestimates what was in the record. The most striking omission is Taylor's testimony. The ALJ was required to evaluate whether Taylor's statements about the intensity and persistence of his pain were consistent with the available evidence and whether that testimony supported an earlier onset date. He failed to do so. See 20 C.F.R. § 404.1529(c)(2) (stating that the ALJ must consider a claimant's subjective complaints of pain and its effects to him even where the available objective medical evidence does not substantiate the claimant's statements). Nor did the ALJ give any reason for apparently rejecting Taylor's testimony. See *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("[A]n ALJ must 'minimally articulate his reasons for crediting or rejecting evidence of disability.'"). Although the ALJ's first decision found Taylor's complaints incredible because they were not corroborated by the medical evidence available, Magistrate Judge Keys rightly reversed this determination because it was contrary to SSR 83-20. The ALJ cannot implicitly reject Taylor's testimony on this ground the second time around

under the law of the case doctrine, see *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998), without pointing to evidence that furnishes compelling grounds for departure from Judge Keys's ruling.

Relying on our decision in *Carlson v. Shalala*, the Commissioner argues that the ALJ was not required to address Taylor's statements because he found Lawe-Taylor's testimony not credible and Lawe-Taylor's statements just corroborated Taylor's testimony. 999 F.2d 180 (7th Cir. 1993). But *Carlson* does not support the odd proposition that a claimant's testimony may be disregarded when his supporting witness's testimony corroborates his statements. In *Carlson*, we held that the ALJ was not required to discuss the claimant's wife's testimony if the claimant's testimony and the two were essentially the same. *Id.* at 181. We noted that although the ALJ could not ignore an entire line of evidence, he was not required to evaluate every piece of testimony and evidence submitted. *Id. Carlson*, however, did not dispense with the Administration's rules requiring the ALJ to discuss the claimant's testimony. See SSR 83-20 at *2 (indicating that the claimant's allegations should be the starting point of the onset date analysis); 20 C.F.R. § 404.1529(c)(2). The ALJ may not ignore an entire line of evidence just because a supporting witness is found not credible.

Furthermore, the ALJ's adverse credibility determination against Lawe-Taylor does not withstand closer analysis. See *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) (noting that a court will overturn credibility determinations if they are patently wrong). While credibility determinations are entitled to special deference because the ALJ is in a better position than the reviewing court to observe a witness, see *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2003), they are not immune from review. A court has greater freedom to review credibility determinations based on objective factors or fundamental implausibilities, rather than

subjective considerations, see *Clifford*, 227 F.3d at 872.

In rejecting Lawe-Taylor's testimony, the ALJ stated:

> She had a remarkably detailed memory of the claim-
> ant's activities of daily living, his sleeping habits and
> his ability to ambulate from 1987 through 1991. She
> was unwavering, without ever expressing any doubt
> in what she remembered. It was as crisp and clear as if
> it had been yesterday. No evidence was offered that she
> had a photographic memory or even a remarkable
> memory. In fact, she was unable to name at the hearing
> any other person, such as a minister, siblings, friends,
> etc., who could corroborate her testimony that she had
> been living with the claimant for 17 years.

The ALJ's rationale for questioning Lawe-Taylor's
memory is wholly unsupported by the record. Lawe-Taylor
was never asked to name an individual who could verify her
relationship with Taylor, and so she can hardly be faulted
for failing to do so. At the hearing, the ALJ asked her who
would be able to testify concerning Taylor's ability to work
in 1987. She responded that half of Taylor's co-workers
were deceased and that she did not know many of them. We
do not see how this casts any doubt on her credibility, and
in any event, this was not the reason the ALJ gave for
rejecting her testimony. While the ALJ is not required to
rely on Lawe-Taylor's testimony if it merely repeated
Taylor's testimony, he is required to give reasons based in
the record for a decision to reject it. He did not do so here.

Another piece of evidence that the ALJ failed to con-
sider was the 1993 SSI application file, which Dr.
Abramson, Taylor and the ALJ in his first decision consid-
ered to be crucial to determining the progression of Taylor's
disability and whether he was disabled on or before March
31, 1991. This omission, as well as the failure to explain
why he proceeded without it, also supports reversal,
because it is contrary to SSR 83-20's requirement that the

ALJ secure any additional medical evidence before making any inferences as to the onset date as well the ALJ's obligation to build a fair and full record. See *Thompson v. Sullivan*, 933 F.2d 581, 586 (7th Cir. 1991). The government argues that this failing should be excused because the ALJ did mention at the 2002 hearing that the file appeared to be irretrievably lost. However, at the same hearing, he mentioned that he would look again and his written decision makes no mention of the outcome of this search.

For these reasons, we agree with the district court's conclusion that the ALJ's finding that Taylor was not disabled prior to March 31, 1991, was not supported by sufficient evidence. We turn to the question whether the court imposed the proper remedy in this case.

## III

Under sentence four of the statute granting judicial review of the Commissioner's final decisions, 42 U.S.C. § 405(g), the court has authority to enter a judgment affirming, modifying, or reversing the Commissioner with or without remanding the cause for rehearing. 42 U.S.C. § 405(g). When an ALJ's decision is not supported by substantial evidence, we have held that a remand for further proceedings is the appropriate remedy unless the evidence before the court compels an award of benefits. See *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993). An award of benefits is appropriate only where all factual issues have been resolved and the "record can yield but one supportable conclusion." *Id.*

Rather than remand the case for further proceedings, the district court instructed the Commissioner to grant an award of benefits. It settled on January 7, 1990, as the correct onset date, and thus concluded that Taylor was entitled to benefits. It decided, furthermore, that it could award benefits immediately based on the ALJ's

obduracy in complying with the law of the case, even if the evidence yielded more than one supportable onset date.

**A**

We first address the district court's determination that Taylor was disabled as of January 7, 1990. In selecting this date, the court relied principally on Taylor's testimony and the fact that his doctor prescribed the drug Trental for him. This went beyond what is permitted by SSR 83-20, however, which states that "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity)." SSR 83-20 at *3. SSR 83-20 does not free the claimant from her burden to prove disability within the meaning of the Act. See 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1520; see also *Pugh*, 870 F.2d at 1279 (holding the relevant inquiry under SSR 83-20 is "whether the chosen onset date is supported by substantial evidence, not whether an earlier date could have been supported"). Although Taylor stopped working as a forklift operator in 1987, we cannot determine the full extent of his limitations at that point. Even if it is possible to infer that peripheral vascular disease was present in 1990 (from the Trental or otherwise), there is no evidence to indicate that the disease had progressed so far so as to prevent him from engaging in any substantial gainful activity. See *Armstrong*, 160 F.3d at 590. On this record, we can neither conclude that Taylor was disabled before March 31, 1991, nor rule out that possibility.

**B**

In light of this finding, we turn to the question whether an award of benefits was appropriate in this case. The

district court interpreted our decision in *Wilder v. Apfel*, 153 F.3d 799 (7th Cir. 1998), to permit a court to award DIB when the agency has displayed "obduracy" in complying with the law of the case. Here, the court thought, the ALJ was obdurate when it ignored Judge Keys's opinion and failed to obtain the 1993 SSI file or explain why it was possible to proceed without it, and when it disregarded the analytical framework of SSR 83-20.

*Wilder* did not hold, however, that obduracy alone could ever warrant an award of benefits. There, the agency's failure to apply the law of the case after the first remand once again left uncontradicted the medical evidence corroborating the claimant's alleged onset date. Because the agency failed to present evidence contradicting this medical evidence after a second evidentiary hearing, we found it necessary to "bring the charade to an end." *Wilder*, 153 F.3d at 801. We noted in the earlier remand that medical evidence is entitled to considerable weight and an ALJ is not required to accept or permitted to accept medical evidence if it is refuted by other evidence. *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) (*Wilder I*). But where there is no such evidence, the ALJ cannot continue to disregard the medical opinion. Another remand for further proceedings was unnecessary in *Wilder* because after two evidentiary hearings, the ALJ had no reasonable grounds to reject the claimant's claim. *Wilder*, 153 F.3d at 804.

It remains true that an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability. See *Campbell*, 988 F.2d at 744; *Micus v. Bowen*, 979 F.2d 602, 609 (7th Cir. 1992) (remanding for an award of benefits based on the uncontradicted medical opinion supporting a claim of disability); *Woody v. Sec'y of Health and Human Serv.*, 859 F.2d 1156, 1162-63 (3d Cir. 1988) (awarding benefits because "[e]ight years of administrative and judicial proceedings [had] produced a record in which the uncontra-

dicted medical and lay evidence" proved disability). This is so because a court does not have the authority to award disability benefits on grounds other than those provided under 42 U.S.C. § 423. Subsection (a)(1)(E) requires that the claimant must be disabled under the Act in order to qualify for benefits. As the Supreme Court stated in *Office of Personnel Management v. Richmond*, payment from the U.S. Treasury must be authorized by a statute. 496 U.S. 414, 424 (1990). Obduracy is not a ground on which to award benefits; the evidence properly in the record must demonstrate disability.

Here the ALJ's decision was not supported by substantial evidence in part because he failed to develop the record, leaving unresolved the main factual dispute whether Taylor was disabled prior to March 31, 1991. Further proceedings to allow additional lay evidence to be taken are necessary to resolve this case.

## IV

We VACATE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion. We urge the Commissioner to assign a new ALJ to handle any additional proceedings. See *Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir. 2003).

A true Copy:

　　　　Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*