**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 21, 2018[*]
Decided February 22, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 17-1798

| | |
|---|---|
| JAMES AULIK, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| *v.* | No. 16-C-248 |
| NANCY A. BERRYHILL, | William C. Griesbach, |
| Acting Commissioner of Social Security | *Chief Judge.* |
| *Defendant-Appellee.* | |

**O R D E R**

James Aulik seeks disability insurance benefits based on back pain and mental impairments. His eligibility for benefits depends on whether he was disabled as of the last date that he was insured for them. *See* 42 U.S.C. §§ 416(i), 324(a)(1)(A), (c)(1); 20 C.F.R. § 404.131; *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 348 (7th Cir. 2005). An administrative law judge determined that Aulik was not disabled by the date that he was last insured and denied the application. Aulik argues that the ALJ did not follow a

---

[*] Aulik's counsel moved to waive oral argument, and this court granted the motion. FED. R. APP. P. 34(e).

pertinent regulation in deciding the onset date of his disability. But even if Aulik is right, any error in deciding the onset date was harmless. Substantial evidence supports the ALJ's ruling that, regardless of the correct onset date, Aulik was not disabled on the date that he was last insured. Therefore we affirm the judgment.

Aulik applied for disability benefits on December 6, 2007, and asserted that he was disabled by the date that he was last insured for benefits—June 30, 2006. In his application, he alleged severe back pain from diffuse idiopathic skeletal hyperostosis. This is a progressive condition where the spine calcifies and can produce back pain and stiffness. Aulik also alleged some mental limitations. After an ALJ denied benefits following a hearing where Aulik appeared without counsel, the parties agreed to remand the case for another hearing where counsel would represent him. That hearing's record contains the evidence that we now review.

Aulik has received successful treatment for two back injuries. He suffered his first injury in 1984 when a steel beam fell and struck him in the back. A chiropractor treated his back and neck pain, and he was cleared to return to work eight months later. Aulik injured his back again ten years later while he was working on telephone lines. He sought treatment from a chiropractor for lower back pain, a lumbar injury, and partial dislocation. The chiropractor treated Aulik almost daily for a month, after which he concluded that Aulik had fully recovered.

Aulik received further, successful treatment for back pain over the next decade. He saw his chiropractor occasionally from 1995 through 1998 and then ten times in 2001, after which he was "feeling great." Another chiropractor, Paul Cibula, treated Aulik three times between 2002 and 2003 for neck and back pain. Aulik responded well to the treatment. Around this time Aulik left his job installing telephone lines primarily because of a conflict with his boss. He has not worked since.

Aulik's back pain entered a new phase in September 2006. At that time, he saw Dr. Daniel Wautlet and reported a "gradual onset" of back pain over the previous three to four weeks. Dr. Wautlet tried to ease the pain with back manipulations. He then instructed Aulik to seek immediate care for high blood pressure. At the hospital, Aulik told the doctors he had been in pain for one month; he denied any back problems before August. The next month Dr. Cibula observed that Aulik's back condition was "much worse." He took x-rays and diagnosed Aulik with diffuse idiopathic skeletal hyperostosis. In 2010 Dr. Cibula suggested that Aulik's hyperostosis became disabling sometime in 2006. A rheumatologist reviewed a CT scan of Aulik's spine taken in June 2008 and also opined that Aulik had a form of hyperostosis.

In his decision denying benefits, the ALJ applied the five-step analysis of 20 C.F.R. § 404.1520(a) and concluded Aulik was not disabled by June 30, 2006—when he was last insured. He relied on a vocational expert who had testified that on that date jobs were available to a person of Aulik's age (he was born in 1959) and education who is limited to sedentary and unskilled work and by other restrictions. The ALJ used the filing date of Aulik's application for benefits (December 6, 2007) as the onset date for Aulik's disabling hyperostosis. Finding further that Aulik was not disabled on June 30, 2006, the ALJ ruled that Aulik was ineligible for disability benefits. Aulik sought judicial review, *see* 42 U.S.C. § 405(g), and the district judge affirmed the decision.

Aulik maintains that he qualifies for disability benefits. Again, he qualifies for disability benefits only if his disability arose while he was insured. *See Briscoe*, 425 F.3d at 348. In reviewing the ALJ's decision, we assess whether it is supported by substantial evidence and based on the proper legal criteria. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Aulik contends that the ALJ erred by not properly applying Social Security Ruling 83-20 in determining the onset date of his disability.

SSR 83-20 describes "the relevant evidence to be considered when establishing the onset date of a disability." SSR 83-20, 1983 WL 31249 (Jan. 1, 1983). The Ruling provides that to determine the onset date of disabilities of non-traumatic origin, an ALJ must consider (1) the applicant's alleged date of onset (in this case, June 30, 2006); (2) the applicant's work history; and (3) the medical evidence. SSR 83-20. The alleged onset date should be used if consistent with the evidence. *Id.* The adjudged onset date "must have a legitimate medical basis." *Id.*

We might concede that the ALJ did not properly follow SSR 83-20. The ALJ arrived at an onset date of December 6, 2007 using the filing date of Aulik's dual applications for disability benefits and supplemental security income. Aulik's filing date is relevant to the onset date for supplemental security income, but it is *not* relevant to the onset date for disability benefits. *See* SSR 83-20; *Briscoe*, 425 F.3d at 356.

Nonetheless any error in setting the onset date is harmless because the ALJ permissibly ruled that Aulik was not disabled by back pain by June 30, 2006, and thus Aulik is disqualified from benefits. Aulik's medical records show that in 2003, Dr. Cibula wrote that Aulik was responding well to treatment. The next time that Aulik sought medical attention for his back was in September 2006, three *months* after he was last insured. He reported a "gradual onset" of back pain over the prior three to four *weeks* and, significantly, "[h]e denie[d] additional problems before" then. Based on this record, the ALJ reasonably concluded that Aulik was not disabled before June 30, 2006,

and therefore properly denied his application for benefits. *See Schloesser v. Berryhill*, 870 F.3d 718–20 (7th Cir. 2017); *cf. Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006) (finding harmless error where ALJ implicitly followed SSR 02-1p).

We are unpersuaded by Aulik's argument that the ALJ should have consulted a medical advisor to determine the onset date. An ALJ "should call on the services of a medical advisor when onset must be inferred," SSR 83-20, but we have said this rule does not "*require*" ALJs to consult medical advisors. *Eichstadt*, 534 F.3d at 667 (emphasis in original). No inferences were needed here because Aulik denied suffering from disabling problems before August, 2006. Moreover, a medical advisor's retrospective analysis generally must be corroborated by evidence contemporaneous with the eligibility period. *Liskowitz*, 559 F.3d at 742; *see also Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006). Because the record contains no medical records from the three years preceding Aulik's alleged onset date, no evidence could corroborate a medical advisor's retrospective opinion. Thus "[i]t is . . . difficult to see how any medical examiner could have provided an opinion, grounded in the requisite legitimate medical basis" that his back pain was disabling as of June 30, 2006. *See Eichstadt*, 534 F.3d at 667.

Aulik raises three more contentions, but none is persuasive. First, he says that the ALJ did not give adequate weight to the medical records and his siblings' testimony regarding mental limitations that surfaced while he was insured for benefits. But the ALJ found, and Aulik does not contest on appeal, that his mental impairments did not contribute to any disability. Evidence about when those conditions surfaced, therefore, does not show that Aulik was disabled by the date he was last insured. *See Briscoe*, 425 F.3d at 348. Second, he argues that the three-year gap in medical evidence before June 2006 means that the ALJ did not have a sound basis for determining Aulik's residual functional capacity as of June 2006. This is incorrect. The ALJ determined Aulik's capacity to work as of June 2006 by looking at what he and his physicians had said from September 2006 through 2008. That evidence reasonably allowed for a judgment about Aulik's condition in June 2006. Finally, Aulik argues that the ALJ improperly ignored Dr. Cibulas's 2010 statement that Aulik's disability began in 2006. This statement is unenlightening. The critical issue is *when* in 2006 Aulik became disabled, and Dr. Cibula's statement sheds no light on that question. In any event, whether Aulik was "disabled" is a determination for the Commissioner, not a healthcare provider. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Because substantial evidence supports the ALJ's conclusion that Aulik was not disabled as of the date last insured, the judgment is AFFIRMED.