In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3391

SEAN C. WALKER,

*Plaintiff-Appellant,*

*v.*

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:16-cv-396 — **Theresa L. Springmann**, *Chief Judge.*

ARGUED JULY 5, 2018 — DECIDED AUGUST 15, 2018

Before WOOD, *Chief Judge*, and SCUDDER and ST. EVE,
*Circuit Judges*.

SCUDDER, *Circuit Judge*. Sean Walker has degrees in
robotics and electrical engineering and worked for 21 years,
primarily as an engineer, before suffering a stroke in 2008.
Walker tried but was not able to return to work after his
stroke. Medical records show that his physical and cognitive
condition has gradually worsened since 2008. In a separate

proceeding, the Social Security Administration determined that Walker became disabled as of December 2014. Before us in this appeal is the question of Walker's disability status at an earlier point in time, from his stroke in January 2008 to December 2014. Here, an ALJ, though recognizing the agency's prior finding of disability as of December 2014, determined that Walker was not disabled before that date, and the district court affirmed. We vacate and remand, as the ALJ's conclusion sweeps too broadly by not accounting for medical and other evidence strongly suggesting that Walker's condition and residual functional capacity had worsened to such a degree that he become disabled by approximately the middle of 2012.

## I

### A

Our starting point is the medical evidence and what it shows over time. Walker's condition was in no way static and indeed changed substantially over the seven-year period in question. What emerges by approximately the middle of 2012 is record evidence showing an individual who, at first, appears to have recovered from a stroke, but then takes a turn for the worse that leaves him unable to live on his own, fighting recurring dizziness, imbalance, and short-term memory difficulties, while also struggling to walk any meaningful distance.

The account begins with Walker reporting to the emergency room with complaints of vertigo and a persistent headache on January 13, 2008. A CT scan revealed Walker had suffered a stroke, which resulted in his being hospitalized for a week. Approximately one month later, a neurologist, Dr. Isa

Canavati, examined Walker and found that the brain
hemorrhaging from the stroke had resolved. Dr. Canavati
noted ongoing complaints of dizziness and headache, but
observed that Walker had functioned well since his release
from the hospital.

Following his stroke, Walker began seeing his primary
care physician, Dr. William Goudy, on a regular basis. At his
appointment with Dr. Goudy on January 31, 2008, Walker re-
ported dizziness and needed the assistance of a cane to walk.
He continued to see Dr. Goudy approximately every three
months during 2008 and then biannually from 2009 until 2014.
As the ALJ observed, Dr. Goudy's treatment notes from
Walker's visits in June and September 2008 and February
2009, do not reflect any stroke-related complaints such as diz-
ziness, headaches, or fatigue. The same seems to be true for
the period between March 2008 and February 2012, when
Walker did not see Dr. Goudy for any acute stroke-related
problems and only occasionally for dizziness.

In April 2012, Walker underwent an examination by
clinical psychologist Kay Roy. Dr. Roy opined that Walker
had difficulties with concentration and attention and
struggled to understand, remember, and follow simple
instructions in a sustained manner due to his moderate to
severe challenges with memory. Dr. Roy also assigned
Walker a Global Assessment of Functioning score of 52, which
indicated moderate difficulty functioning psychologically,
socially, and occupationally. See AMERICAN PSYCH. ASSOC.,
DIAGN. & STAT. MAN. OF MENTAL DISORDERS 34 (4th ed., rev.
2000) (DSM-IV). (Another metric has since replaced the GAF.
AMERICAN PSYCH. ASSOC., DIAGN. & STAT. MAN. OF MENTAL
DISORDERS 16 (5th ed. 2013) (DSM-V).)  A few weeks after her

examination of Walker, but without conducting any further examination, Dr. Roy revisited her findings and adjusted Walker's GAF score to 66, which indicated just mild impairments (rather than moderate impairments, as the earlier score of 52 indicated). See DSM-IV at 34. In the end, Dr. Roy opined that Walker displayed difficulties with concentration and attention, while also being limited in his abilities to understand and follow instructions due to mild challenges with his memory.

The picture begins to change in early 2012. In May 2012, for instance, physician Abdali Jan examined Walker and found that he had short-term memory deficits but a normal attention span. Dr. Jan also observed Walker's difficulty walking and maintaining his balance. Dr. Jan further opined that Walker's back pain prevented him from walking or standing for prolonged periods.

Walker's condition then deteriorated further. On August 16, 2012, Dr. Goudy met with Walker and recorded his observations in a letter. Dr. Goudy began by noting that, while Walker's "current status is stable," he has been "unable to work" since suffering the stroke in 2008. Dr. Goudy then grounded his prognosis in specific observations about Walker's then-current condition and limitations, including that Walker "gets intermittent, unpredictable episodes of dizziness and near fainting since he had his stroke," is "unable to stand alone on either leg for more than 3 seconds because of leg weakness and poor balance," cannot "walk heel-to-toe for more than 3 steps without losing his balance," "loses his ability to stay focused after about 30 minutes at a task," and has experienced a worsening of his short-term memory since the stroke. All of this left Dr. Goudy of the opinion that

Walker's "cognitive skills, his physical strength, and his ability to concentrate on tasks will all slowly worsen over the next few years."

For his own part, Walker testified at the July 2016 hearing before the ALJ that he was "down" three to five times a week because of dizziness and was experiencing episodes of dizziness throughout the summertime that prevented him from getting out of bed three to four times a week, as the heat has impacted him negatively since his stroke. Walker added that he was avoiding driving because of unpredictable dizzy spells. He also testified that he moved in with his mother sometime in 2012 or 2013, as he was no longer capable of living alone.

B

In March 2012, Walker filed for both disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI, claiming he became disabled as of January 15, 2008, just after suffering his stroke. Following a hearing, an ALJ determined that Walker was not disabled. Walker successfully appealed the ALJ's decision, and the district court remanded the case to the agency for renewed consideration of Dr. Goudy's opinions and observations as Walker's treating physician. Before this proceeding concluded, Walker filed a second application for supplemental security income under Title XVI, alleging that he had become disabled by December 5, 2014. The agency agreed and granted the application, expressly finding that Walker was disabled by that date.

As for Walker's original application for disability benefits and supplemental income, his claim proceeded to rehearing

before a new ALJ. The ALJ recognized that the proper starting point was the agency's intervening determination that Walker had become disabled by December 5, 2014. Accordingly, the ALJ expressly accepted that determination and proceeded to evaluate whether Walker was disabled during the earlier period of January 2008 to December 2014. After holding a hearing, the ALJ found no disability during this seven-year period.

In accordance with Social Security regulations, the ALJ followed the five-step sequential evaluation process to determine that Walker was not disabled prior to December 2014. See 20 C.F.R. § 404.1520(a)(4)(i)–(v). At step one, the ALJ found that Walker was not engaged in substantial gainful activity. At step two, the ALJ concluded that Walker had three severe impairments: status post cerebral hemorrhage, degenerative disk disease of the lumbar spine, and a cognitive disorder not otherwise specified. At step three, the ALJ determined that none of these severe impairments, alone or in combination, established that Walker was disabled, and therefore, at step four, the ALJ reviewed the record and determined that Walker had the residual functional capacity (or RFC) to perform certain sedentary work with various limitations. Finally, at step five, the ALJ concluded that, although Walker could not perform any past relevant work given his RFC, he was capable of performing certain jobs that existed in significant numbers in the national economy.

The ALJ's determinations at step four are the most relevant to this appeal. In determining Walker's RFC, the ALJ did not give Dr. Goudy's opinion controlling weight. Instead, the ALJ found that Dr. Goudy's opinion was not fully supported by the record evidence and thus entitled to only "partial

weight." More specifically, the ALJ explained that she dis-counted Dr. Goudy's opinion that Walker was unable to work because this conclusion was not based solely on medical evi-dence. The ALJ also found that Dr. Goudy's treatment rec-ords, in addition to likely being based on Walker's subjective statements (as opposed to medical observations by Dr. Goudy), did not consistently document episodes of dizziness and fainting until closer to 2013 to 2014. The ALJ further de-termined that Dr. Goudy's conclusions about Walker's loss of memory were at odds with other evidence in the record, in-cluding the fact that the memory problems "did not preclude the claimant from living independently for almost four years [from 2008 through 2011] following his stroke."

The driving force behind the ALJ's determination of Walker's RFC appears to have been Dr. Roy's April 2012 as-sessment of Walker, which the ALJ gave "significant weight." As the ALJ saw it, Dr. Roy's assessment limited Walker to "simple routine repetitive work in an environment free from fast paced production, with simple work-related decisions, and few, if any, workplace changes." These limitations, the ALJ reasoned, not only recognized Walker's memory deficits, but also accounted for prior reports of Walker's daily activi-ties from "2008 until at least 2012," including his living alone, driving short distances, managing his own money, reading, and tinkering with electronics.

## II

### A

What makes this case challenging is the combination of a seven-year period of alleged disability, from January 2008 to December 2014, and the extensive medical evidence of

Walker's condition during these years following his stroke. Our review is to determine whether substantial evidence supported the ALJ's findings. 42 U.S.C. § 405(g). As the Supreme Court explained in *Richardson v. Perales*, 402 U.S. 389 (1971), this standard requires more than "a mere scintilla" of proof and instead "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 401. In reviewing the administrative record, our role is not to reweigh the evidence or substitute our judgment for that of the ALJ. See *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

We begin where the ALJ began—and indeed from a point of common agreement among the parties: Walker was disabled by December 5, 2014. The central issue, therefore, is whether the medical evidence shows that Walker's RFC had so deteriorated as to leave him disabled before that date—in particular, at some point between 2008 and 2014. The Social Security Administration has issued an administrative ruling that supplies the framework for determining when a claimant became disabled—the so-called "onset date." In Social Security Ruling 83-20, the agency explained that the "onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in [Substantial Gainful Activity] (or gainful activity) for a continuous period of at least 12 months or result in death." SSR 83-20 at *3. By its terms, then, SSR 83-20 supplies the framework for answering the "when" question after the agency first employs the familiar five-step process and finds that a claimant is disabled. See *Scheck v. Barnart*, 357 F.3d 697, 701 (7th Cir. 2004).

The circumstance making the proper analysis here unusual is that a separate administrative proceeding culminated in the finding that Walker was disabled as of December 5, 2014. The ALJ acknowledged this fact, however, and indeed rightly accepted it at the outset of evaluating Walker's claim. For all intents and purposes, then, the question before the ALJ was whether Walker's disability onset date fell before December 5, 2014. Seen in this light, the agency's guidance in SSR 83-20 provides important direction.

In SSR 83-20, the agency recognized that determining an onset date often requires approximation, particularly "with slowly progressive impairments, [where] it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." *Id*. at *2. That a precise onset date is not established by the medical evidence does not doom a claim for disability. See *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 353 (7th Cir. 2005). In such a scenario, an ALJ must "infer the onset date from the medical and other evidence" in the administrative record. *Id*. (citing SSR 83-20 at *2). Whether explicitly or implicitly—and especially in light of the ALJ's acceptance of the agency's finding that Walker was disabled as of December 5, 2014—the ALJ needed to align the analysis of Walker's claim with these principles. See 20 C.F.R. § 402.35(b)(1) (explaining that Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations that [the agency has] adopted").

In *Briscoe*, we relied on the guidance provided by SSR 83-20 in affirming a district court's decision that substantial evidence did not support an ALJ's finding that the claimant was

not disabled before a particular date. See 425 F.3d at 355. In terms fully applicable to Walker's circumstances, we explained that "[w]here, as here, a claimant is found disabled but it is necessary to decide whether the disability arose at an earlier date, the ALJ is required to apply the analytical framework outlined in SSR 83-20 to determine the onset date of disability." *Id.* at 352. We then turned to a close examination of the three factors identified in SSR 83-20 for "determining the onset date of disabilities of a nontraumatic origin: (1) the claimant's alleged onset date; (2) the claimant's work history; and (3) medical and all other relevant evidence." *Id*. at 353 (citing SSR 83-20 at *2). This same approach charts our review of the administrative record here.

B

Walker contends that the ALJ improperly gave Dr. Goudy's opinion only "partial weight" and also failed to incorporate all of his medical impairments into the RFC determination. The agency sees the record the other way, contending that the totality of medical and other evidence from 2008 to 2014 supports the ALJ's determination that Walker was not disabled during this seven-year period.

Our review of the record leaves us unpersuaded that the question presented is amenable to such an all-or-nothing answer in either party's favor. The medical evidence shows that Walker's condition changed considerably between 2008 and 2014. The initial signs pointed to Walker recovering from his stroke and perhaps eventually being able to return to work. By approximately the middle of 2012, however, Walker's condition worsened, leaving him experiencing recurring bouts of dizziness, substantial difficulty walking and standing, and a

slipping memory—with Dr. Goudy opining that these conditions likely would worsen further over time. And we know Walker's overall condition worsened to a degree that the agency determined him to be disabled as of December 2014.

On this record we are unable to conclude that the ALJ's determination that Walker was not disabled at any point during the seven-year period before December 2014 was supported by substantial evidence. The ALJ's error stemmed from considering evidence from particular points between 2008 and 2014 to support a conclusion covering the entire period. By trying to fit the evidence to support a conclusion covering such a broad period of time, the ALJ failed to remain watchful for the intermediate possibility of Walker becoming disabled sometime between the bookends of January 2008 and December 2014. The record evidence itself exposes the error, revealing the iterative and progressive deterioration in Walker's condition over time and the reality that his condition may have become "sufficiently severe to prevent [him] from engaging in SGA (or gainful activity) for a continuous period" of at least one year. SSR 83-20 at *3.

Take, for example, the fact that Dr. Goudy's treatment notes reported only a few instances of dizziness and cognitive impairments from 2008 to 2012, but then sometime after 2012 began documenting more severe and recurring episodes of dizziness. The ALJ's opinion, while noting the changing nature of Dr. Goudy's observations, never stepped back to evaluate and explain how these changes impacted Walker's RFC or the weight assigned to Dr. Goudy's opinion. The approach closed the door on a conclusion—invited by the agency's direction in SSR 83-20—that Walker's worsening condition signaled the onset of disability in or around 2012.

Consider a related point clear from the record. The ALJ observed that, "[o]nly occasional dizziness and headache was noted in February 2008 shortly after [Walker's] stroke with more severe and ongoing episodes not documented until 2013." At another point, and in much the same vein, the ALJ observed that, while "Dr. Goudy's treatment records do not consistently document intermittent, unpredictable episodes of dizziness and near fainting since the claimant had his stroke," the records do "show these issues nearer 2013 to 2014." In making these observations, the ALJ gave short shrift to the fact that the relevant period *included* 2013 and 2014—again signaling the possibility of disability onset by that point in time.

By way of another example clear from the record, the ALJ afforded Dr. Roy's 2012 assessment significant weight because the limitations Dr. Roy placed on Walker were, in the ALJ's view, compatible with Walker's own accounts of his daily living in 2012. Specifically, the ALJ explained that Walker was "largely independent in his activities of daily living, i.e., living alone, driving, managing his own money, reading, and tinkering with electronics, from 2008 until at least 2012." But here again the ALJ overlooked that the relevant period extended beyond 2012. Indeed, in his own testimony, Walker explained that sometime in 2012 or 2013 he moved in with his mother because it became too difficult to live alone. The ALJ's focus on evidence from 2008 to Dr. Roy's examination in 2012 left unanswered the possibility of disability onset sometime thereafter, and perhaps shortly thereafter as evinced by Walker's own testimony. See *Briscoe*, 425 F.3d at 354 (drawing on 20 C.F.R. § 404.1529(c)(2) to explain that an ALJ must consider a claimant's subjective complaints of pain

and its effects on him even when available objective evidence does not substantiate the claimant's statements).

We owe a word about the ALJ's decision to afford only partial weight to Dr. Goudy's August 2012 assessment of Walker. As the treating physician, Dr. Goudy's opinion was entitled (under the regulations in effect at the time) to controlling weight unless the ALJ set forth "good reasons" for assigning it lesser weight. 20 C.F.R. § 404.1527(c)(2); *Schaff v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) (explaining that an ALJ "must give a good reason" for rejecting a treating physician's opinion). The reasons set forth by the ALJ are not supported by substantial evidence, as they too discount, if not overlook, express conclusions Dr. Goudy made about Walker's condition from August 2012 forward. In clear and precise terms, Dr. Goudy stated that Walker's condition—his recurring dizziness and imbalance, worsening memory, inability to walk any meaningful distance—not only left him unable to work, but was expected to worsen further in the coming years. The ALJ needed to offer a good reason for disregarding this opinion, coming as it did from Walker's treating physician in August 2012. In the face of Walker's deteriorating condition, the record does not support the ALJ's decision to prefer Dr. Roy's one-time assessment of Walker in April 2012 over the views and prognosis of Walker's treating physician from a later point in time.

## III

We are mindful that Walker's application for disability benefits has already made two laps through the administrative process. And, while we appreciate the understandable desire for finality, we cannot short circuit the requirement that substantial evidence support the Social

Security Administration's final decision. It will be up to the ALJ on remand to revisit whether Walker became disabled before 2014 and, in particular, by approximately the middle of 2012. Both parties will have the opportunity to present their respective positions.

For these reasons, we VACATE the ALJ's decision and REMAND for further proceedings consistent with this opinion.