RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0005p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

─────────────────

DAVID L. FUGATE,

*Plaintiff-Appellant,*

*v.*

No. 14-5610

COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:13-cv-00113—William O. Bertelsman, District Judge.

Decided and Filed: January 12, 2015

Before: BATCHELDER, MOORE, and SUTTON, Circuit Judges.

─────────────────

#### COUNSEL

─────────────────

**ON BRIEF:** Sarah H. Bohr, BOHR & HARRINGTON, LLC, Atlantic Beach, Florida, for Appellant. Mary Ann Sloan, Kristin Rogers, Brian C. Huberty, SOCIAL SECURITY ADMINISTRATION, Atlanta, Georgia, Charles P. Wisdom, Jr., John S. Osborn, III, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

─────────────────

#### OPINION

─────────────────

SUTTON, Circuit Judge. After the Social Security Administration erroneously overpaid David Fugate $8,875 in disability benefits, an administrative law judge erroneously ruled that Fugate could keep the money. Rather than let dormant legal requirements lie, Fugate appealed this favorable decision to the Administration's Appeals Council, which corrected both errors and left Fugate with an $8,875 bill. Fugate now claims the erroneous overpayment was a binding

decision the Administration was not entitled to correct, and that no substantial evidence permitted the Administration to conclude it was an overpayment.  We disagree and affirm the district court's grant of summary judgment in favor of the Commissioner of Social Security.

In 1992, Fugate, a recipient of workers' compensation payments, applied for and received disability insurance benefits from the Social Security Administration.  When an applicant for Social Security disability benefits also receives workers' compensation benefits, the relevant statute requires the Administration to reduce its payments until the applicant's total benefits equal eighty percent of his "average current earnings."  42 U.S.C. § 424a(a)(2)–(5).  The same statute tells the Administration how to calculate an applicant's average current earnings.  *Id.* § 424a(a).  In Fugate's case, the Administration relied on a December 1991 pay stub to calculate "one-twelfth of the total of his wages . . . for the calendar year in which he had the highest such wages," *id.* § 424a(a)(C), with "wages" defined as covered earnings "on which Federal Insurance Contribution Act (FICA) taxes are paid," Social Security Handbook § 504.3; *see* 42 U.S.C. § 409(a).

Fugate's pay stub said that he received gross earnings of $22,964.41 in 1991.  After subtracting pretax benefits and retirement contributions (on which Fugate did not pay FICA taxes), the Administration calculated his covered earnings as $21,693.30.  Because Fugate would have received more benefits with a higher calculation of covered earnings, he complained that the Administration should have calculated his covered earnings using pay stubs from his three highest months of earnings in 1991—and has been making the same complaint ever since.  At some point, the complaints seemed to pay off.  On March 29, 2004, after a periodic review of Fugate's benefits, the Administration erroneously determined that Fugate's covered earnings should have been $22,964.41—his gross earnings for 1991.  To make up the difference between this new calculation and its first one, the Administration paid Fugate an extra $8,875.

In 2006, after another periodic review, the Administration realized that its 2004 decision was a mistake.  It had neglected to subtract Fugate's pretax benefits and retirement contributions from his gross earnings to calculate his covered earnings.  That made the Administration's initial $21,693.30 calculation the right one, and the Administration asked Fugate to refund the $8,875 overpayment.  In its letter informing Fugate of the mistake, the Administration told him

that he had the right to request a waiver of the refund on the grounds that the overpayment was not his fault and that a refund would be unfair.  Fugate instead asked the Administration to reconsider its calculation of benefits for the same reasons he had complained about since 1993.

An administrative law judge declined Fugate's invitation to reconsider the 2004 decision. The judge instead determined—mistakenly—that Fugate was entitled to a waiver even though he had not asked for one, and allowed Fugate to keep the $8,875.  Things might have ended then— had Fugate let them.  But he appealed instead.  Fugate still wanted the Administration to tie his benefits to his three highest-paid months in 1991, prompting him to appeal this "favorable" decision to the Administration's Appeals Council.

That was a mistake.  The Appeals Council vacated Fugate's favorable decision because Fugate had not asked for a waiver, and it remanded the matter to a new administrative law judge to recalculate Fugate's covered earnings.  The new judge determined that the Administration's $21,693.30 calculation was the right one all along, and that Fugate owed the government $8,875. Fugate appealed this now-unfavorable decision to the Appeals Council, which declined to review it.

Fugate filed this action in a federal district court challenging the Appeals Council's decision.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  The district court granted the Administration's motion for summary judgment.  R. 21; R. 25.

Fugate raises two claims on appeal.  He argues that the Administration was not entitled to reopen its mistaken 2004 determination in 2006.  And he argues that the Administration's final $21,693.30 calculation lacks substantial evidence.  Neither claim is correct.

As for the first claim, the Administration permissibly reopened its 2004 determination and corrected the mistake.  The Administration may reopen any determination within four years for "good cause."  20 C.F.R. § 404.988(b).  One definition of "good cause" is a finding that "[a] clerical error in the computation or recomputation of benefits was made." *Id.* § 404.989(a)(2); *see also* Soc. Sec. Admin., *Program Operations Manual System* § 04030.080(7) ("If we discover [an error calculating average current earnings] within 4 years we can correct the amount payable after offset.").  In 2006, well within the four-year limitations period, the Administration found

that its 2004 determination "was not correct" because it based Fugate's average current earnings on his gross earnings instead of his covered earnings. R. 11-1 at 68. The Administration permissibly corrected this mistake.

Fugate responds that claim preclusion barred the Administration from reopening its 2004 determination. Claim preclusion establishes "that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 840 (6th Cir. 1997). But the Administration's 2004 determination was not a "final judgment"; it was an "initial determination" subject to reopening. *See* Soc. Sec. Admin., *supra*, § 03101.070(B). The doctrine offers Fugate no refuge.

Fugate separately argues that, even if claim preclusion does not apply, the Administration mistakenly invoked the regulations that purport to authorize reopening an initial determination. Fugate points to 20 C.F.R. § 404.989(a)(3), which allows reopening when "[t]he evidence that was considered in making the determination or decision clearly shows on its face that an error was made." He suggests that the 2004 determination could not have been "clearly" wrong because two different Administration employees "came to two different conclusions after reviewing the same facts—one in 2004 and one in 2006." Appellant Br. 24; *see id.* ("This is not a case of a simple mathematical error . . . ."). In the first place, this suggestion ignores the fact that the Administration relied on a different subsection to reopen the 2004 determination, 20 C.F.R. § 404.989(a)(2), which allows the Administration to correct a "clerical" error. That is a fair assessment of what happened. *See, e.g.*, Soc. Sec. Admin., *supra*, § 04010.010(B)(1). In the second place, the suggestion is wrong on its own terms. There was nothing complex about the 2004 error. The Administration simply treated Fugate's FICA-taxable-plus-untaxed earnings as though they were his FICA-taxable earnings. Correcting this mistake was an elementary matter of subtraction, supplying an additional source of authority for the Administration's decision.

As for the second claim, the Administration based its final calculation of Fugate's average current earnings on substantial evidence. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal*

*Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (internal quotation marks omitted). The Administration calculated Fugate's average current earnings with reference to the $21,693.30 in covered earnings for which he paid FICA taxes, a number supplied by the Internal Revenue Service and consistent with Fugate's pay stub. R. 11-1 at 39, 86. A reasonable mind could accept this evidence as adequate.

In response, Fugate disputes the premise that the $21,693.30 figure represents his covered earnings. He theorizes that he *might* have paid FICA taxes on his $1,148.26 in retirement benefits, which he claims the Administration treated as tax-exempt without any analysis. But, as noted above, the Administration referred to the IRS's own data to determine that Fugate actually paid FICA taxes on $21,693.30 of earnings. *Id.* Moreover, Fugate's pay stub itself shows that he paid $1,659.53 in FICA taxes. *See id.* at 111. When $1,659.53 is divided by 1991's FICA tax rate of 7.65%, *see* Social Security Handbook § 1405.3, it yields his covered earnings: $21,693.30.

One final note. As the Administration's 2006 letter, the first administrative law judge, and the court below all have noted, it appears Fugate remains eligible to apply for a waiver of the $8,875 refund. "A waiver," the relevant regulation says, "may be requested at any time." Soc. Sec. Admin., *supra*, § 02250.002(A)(1). At some point, Fugate may wish to take advantage of this recurring advice.

For these reasons, we affirm.