In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 13-1252

MARILYN R. BOLEY,

*Plaintiff-Appellant*,

*v.*

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

*Defendant-Appellee*.

---

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:12-cv-27-RLY-WGH — **Richard L. Young**, *Chief Judge*.

---

ARGUED OCTOBER 2, 2013 — DECIDED AUGUST 4, 2014

---

Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Marilyn Boley asked the Social Security Administration for disability insurance benefits. The agency denied her request initially and on reconsideration. A person dissatisfied with such a decision has 60 days to request a hearing by an administrative law judge. 20 C.F.R. §404.933(b)(1). Boley took about nine months—but

she had a reason. When the Administration made its deci-
sion on reconsideration, it notified Boley but not her lawyer,
despite 20 C.F.R. §404.1715(a), which requires notice to the
claimant's representative. Boley was ill at the time (she was
preparing for a double mastectomy) and relied on her law-
yer to protect her interests; she did not know, until it was too
late, that her lawyer was in the dark.

After finding out what had happened, Boley's lawyer re-
quested a hearing. An ALJ dismissed that request, ruling it
untimely despite the agency's conceded failure to follow
§404.1715(a). Regulations allow the agency to extend the
time when "good cause" justifies the delay. 20 C.F.R.
§§ 404.911, 404.933(c). In response to written submissions,
the ALJ ruled that Boley lacked "good cause" because she
had received notice and could have filed a request herself. A
federal district judge then dismissed her petition for judicial
review, ruling that the ALJ's decision to dispense with an
oral hearing means that the court lacks subject-matter juris-
diction. *Boley v. Astrue*, 2013 U.S. Dist. LEXIS 9557 (S.D. Ind.
Jan. 24, 2013).

The district judge relied on 42 U.S.C. §405(g), which au-
thorizes review of the agency's final decisions. This statute
provides:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party …
> may obtain a review of such decision by a civil action com-
> menced within sixty days after the mailing to him of notice of
> such decision or within such further time as the Commissioner
> of Social Security may allow.

The ALJ's decision in Boley's case had not been made "after
a hearing", and that, the judge thought, is that. On this un-

derstanding, an agency can prevent judicial review of any claim for benefits by the expedient of refusing to hold a hearing, even when the claimant is entitled to one.

The district court assumed that "hearing" necessarily means an oral procedure required by a statute or regulation. That is a possible reading—and one that *Rios v. Secretary of Health, Education, and Welfare*, 614 F.2d 25, 26–27 (1st Cir. 1980), adopted—but not an inevitable one. *McNatt v. Apfel*, 201 F.3d 1084 (9th Cir. 2000), concluded that a claimant had received a hearing, and was entitled to judicial review, when the SSA had made a final decision after a process that *should* have included live testimony but erroneously failed to do so. And in federal courts, a third meaning of "hearing"—one that dispenses with any need for oral presentations—is common. District courts that grant summary judgment, after receiving papers and legal argument but not live testimony, write that they have decided after a hearing. Similarly a court of appeals will state that it has "heard and determined" an appeal even though it did not hold oral argument. On this understanding, "hearing" means an opportunity to be heard out to the extent the tribunal itself deems appropriate. The Supreme Court held in *Richardson v. Perales*, 402 U.S. 389 (1971), that Social Security benefits may be denied without oral testimony from important witnesses; the Court did not hint that it was thus preventing judicial review by authorizing decision without a §405(g) "hearing".

We think the third possibility—that "hearing" means whatever process the Social Security Administration deems adequate to produce a final decision—is the most satisfactory. Although no court of appeals has adopted that view explicitly, *Shrader v. Harris*, 631 F.2d 297, 300 (4th Cir. 1980),

does so implicitly. Shrader was in much the same position as Boley: she failed to make a timely request for decision by an ALJ; the agency decided that the delay was not justified by "good cause"; the claimant then sought judicial review. The Fourth Circuit concluded that the agency's decision lacked the support of substantial evidence and remanded for a decision on the merits.

The district court distinguished *Shrader* on the ground that Shrader was mentally ill and could not protect her own interests, while Boley was only physically ill. But this is unrelated to the meaning of "hearing" in §405(g). *Shrader* itself emphasized that the claimant had presented a constitutional argument. We return to that subject below; for now it is enough to observe that, if an agency acts without a "hearing" when it rejects (on a paper record) an argument that good cause supports a belated request for administrative review, then the nature of the claimant's impairment or legal argument is irrelevant. That's what it means to say that the court lacks subject-matter jurisdiction, which is the power to decide *whether* a legal argument is sound. See *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012); *Bell v. Hood*, 327 U.S. 678 (1946). A court cannot say: "the plaintiff has a good claim, so there is jurisdiction, but an incorrect claim would be dismissed for want of jurisdiction."

Our conclusion that "hearing" means a decision after whatever process the Social Security Administration itself elects to use follows from *Weinberger v. Salfi*, 422 U.S. 749, 763–67 (1975), and *Mathews v. Eldridge*, 424 U.S. 319, 326–32 (1976). In *Salfi* a claimant contended that one portion of the Social Security Act violated the Constitution, and that with this defect corrected she would be entitled to benefits. The

agency denied her application without an oral hearing, ruling that, given the statutory language, none of the potential factual issues was material to the claim. In *Eldridge* a claimant contended that the Due Process Clause of the Fifth Amendment entitled him to a hearing on a factual dispute; the agency disagreed and resolved his case without an oral hearing.

In both *Salfi* and *Eldridge* the agency made a final decision after a process the agency deemed adequate, and in both cases that process did not include an oral hearing. Both Salfi and Eldridge sought judicial review and were met with arguments that the absence of an oral hearing meant that §405(g) foreclosed jurisdiction. In each case, the Supreme Court held that jurisdiction existed. *Salfi* observed that it would be "futile and wasteful" (422 U.S. at 767) to hold an oral hearing if the agency thought that the claim could be finally resolved without one, and added:

> the [agency] may, of course, award benefits without requiring a hearing. We do not understand the statute to prevent [it] from similarly determining in favor of the applicant, without a hearing, all issues with regard to eligibility save for one as to which [it] considers a hearing to be useless.

*Ibid*. It followed, the Court thought, that §405(g) had been satisfied. This necessarily means that a "hearing" for the purpose of that statute is a decision after whatever procedures the agency elects to use, and that a decision not to hold an oral hearing does not close the courthouse door.

*Eldridge* concluded that §405(g) creates two requirements, only one of which is strictly jurisdictional in the sense that it cannot be waived by the parties. "The waivable element is the requirement that the administrative remedies prescribed

by the [agency] be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the [agency]. Absent such a claim there can be no 'decision' of any type. And some decision by the [agency] is clearly required by the statute." 424 U.S. at 328. Once again the Court's point is that §405(g) allows judicial review when a claim has been presented and finally decided, whether or not the agency thinks live testimony necessary. Boley filed a claim for benefits and pursued it as far as the agency permitted; under *Salfi* and *Eldridge* she is entitled to judicial review of her contention that the agency mishandled her case.

Thirty-four years ago, however, this circuit held otherwise. *Watters v. Harris*, 656 F.2d 234 (7th Cir. 1980), is materially identical to Boley's situation. Watters missed the administrative deadline for seeking a decision by an ALJ and contended that good cause justified the delay. Without an oral hearing, an ALJ rejected that argument and issued a final decision denying Watters's claim for benefits. When Watters asked the judiciary to find that good cause indeed existed, we dismissed for want of jurisdiction and held that the agency's decision not to take oral testimony blocks judicial review. We relied on *Califano v. Sanders*, 430 U.S. 99 (1977), for the proposition that only if a federal statute requires the agency to hold an oral hearing to resolve a particular claim, and the agency complies, is judicial review possible.

*Sanders* does not hold anything that sweeping. It did not purport to overrule *Salfi* or *Eldridge*. The Court considered whether §405(g) allows review of a decision denying a motion to reopen a final decision that had denied an application for benefits. The Court held not, because §405(g) sets a 60-day limit on petitions for judicial review. "[A]n interpreta-

tion that would allow a claimant judicial review simply by filing—and being denied—a petition to reopen his claim would frustrate the congressional purpose, plainly evidenced in §[4]05(g), to impose a 60-day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits. Congress' determination so to limit judicial review to the original decision denying benefits is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims. Our duty, of course, is to respect that choice." 430 U.S. at 108 (citation omitted). In other words, one opportunity for judicial review is enough; a claimant who bypasses that chance cannot create another by a procedure that would evade a statutory deadline.

*Watters* extended *Sanders* by applying the same approach to the 60-day limit for seeking intra-agency review by an ALJ. 656 F.2d at 239. It attributed this time limit to §405(g) itself, apparently not appreciating that the 60-day time for seeking review by an ALJ was created by regulation rather than statute—and that the regulation allows more time for good cause. A court ought not assume that good cause is missing, and that judicial review would frustrate the regulation, when the existence of good cause is the very issue the claimant seeks to present. A district court's decision that good cause for an extension exists (or doesn't) is subject to appellate review. See *Pioneer Investment Services Co. v. Brunswick Associates LP*, 507 U.S. 380 (1993). Judicial review of an ALJ's decision about good cause no more defeats the normal time limit than appellate review of a district court's decision about good cause defeats the normal time limit.

When discussing *Salfi* and *Eldridge*, the panel in *Watters* observed that those claimants had presented constitutional

arguments, which in the panel's view justified judicial review even when claims arising under statutes and regulations are unreviewable. 656 F.2d at 240. Yet the panel did not explain what this has to do with the meaning of the word "hearing", which concerns the agency's procedure rather than the nature of the legal argument by which a claimant seeks to upset the administrative decision. *Sanders* made a similar observation in passing—likewise without linking it to the meaning of "hearing". 430 U.S. at 109. But unlike *Watters*, *Sanders* limited to one the opportunities for judicial review, rather than eliminating even the initial opportunity.

*Eldridge* distinguished between the need for the presentation of a claim to the agency, which it held to be jurisdictional, and the need for exhaustion of the administrative process, which it thought to be non-jurisdictional. The dispute in *Watters*, as in this case, concerns whether the claimant exhausted those procedures by filing a timely request for review: the claimant says yes (when "good cause" is considered), and the agency says no. If, as *Salfi* and *Eldridge* establish, the only jurisdictional element of §405(g) is the need for a formal administrative claim, then the court has subject-matter jurisdiction to resolve the parties' controversy.

Making jurisdiction turn on the presence of a constitutional argument not only lacks support in the text of §405(g) but also would lead claimants to present unnecessary constitutional arguments. Boley has done just that, perhaps in response to the observations in *Watters*. Boley contends that the Due Process Clause requires an oral hearing on her contention that her medical condition, and the agency's failure to send its decision to her lawyer, jointly establish "good cause" for a belated petition for administrative review. Boley

also appears to contend that, as a substantive matter, the Constitution requires the agency to find that good cause exists and to ensure that claimants' lawyers receive notice. Yet it is an important principle that courts never *start* with constitutional arguments. See, e.g., *New York City Transit Authority v. Beazer*, 440 U.S. 568, 582 (1979).

The first question in a case such as this ought to be the meaning of "good cause" in the regulation. If there is a material dispute of fact, the need for an oral hearing should be derived from the Administrative Procedure Act, not from the Constitution. See generally *Rehman v. Gonzales*, 441 F.3d 506 (7th Cir. 2006) (a genuine issue about due process is presented only if the statute and regulations fail to provide notice and an opportunity for a hearing). Reading "hearing" in §405(g) in a way that forces courts to resolve constitutional questions unnecessarily, while bypassing statutes, regulations, and principles of administrative law that might suffice to decide the case, has nothing to recommend it—and if Congress set out to *force* the judiciary to render unnecessary constitutional decisions, the language of §405(g) would be an odd way to do so.

We conclude that *Watters* is wrongly decided. We recognize that there is an established conflict on this issue, with *McNatt* and *Shrader* favoring Boley and a greater number of circuits, including *Rios* (see page 3 above) and the panel in *Watters*, the other way. *Watters* relied on *Ortego v. Weinberger*, 516 F.2d 1005, 1007–08 (5th Cir. 1975), and *Cappadora v. Celebrezze*, 356 F.2d 1, 4 (2d Cir. 1966). *Cappadora* long preceded both *Salfi* and *Eldridge*; *Ortega* came between those cases and did not discuss *Salfi* other than to observe that 28 U.S.C. §1331 does not supply jurisdiction in Social Security cases.

Yet neither the Second Circuit nor the Fifth Circuit has changed course after *Eldridge*. The Sixth and Tenth Circuits have adopted the same view, see *Hilmes v. Secretary of HHS*, 983 F.2d 67 (6th Cir. 1993); *White v. Schweiker*, 725 F.2d 91 (10th Cir. 1984). The Third Circuit has held that constitutional arguments, but not others, can be entertained when the agency does not hold an oral hearing. *Penner v. Schweiker*, 701 F.2d 256, 260 (3d Cir. 1983).

The prospect of moving from one side of a conflict to another is not attractive, especially when the conflict is so old and the Supreme Court has been content to allow the disagreement to continue. Nonetheless, we have a duty to apply §405(g) the way the Supreme Court did in *Salfi* and *Eldridge*, and we very much want to give the statute a reading that avoids unnecessary constitutional litigation of the kind that *Watters* and similar decisions invite.

*Watters* is overruled. This opinion has been circulated to all judges in active service under Circuit Rule 40(e). None requested a hearing en banc.

The district court's judgment is vacated, and the case is remanded with instructions to decide whether substantial evidence, and appropriate procedures, underlie the decision that Boley lacks "good cause" for her delay in seeking intra-agency review.