In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2810

JOHN R. CASEY,

*Plaintiff-Appellant,*

*v.*

NANCY A. BERRYHILL, Acting Commissioner of Social Security,[*]

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:13-cv-00328-RL-JEM — **Rudy Lozano**, *Judge.*

ARGUED SEPTEMBER 27, 2016 — DECIDED JANUARY 30, 2017

Before BAUER, ROVNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* In 2009, the Social Security Administration notified Plaintiff John Casey that he needed to repay about $334,000 in disability benefits he should not have

[*] Nancy A. Berryhill was substituted for Carolyn W. Colvin, as Acting Commissioner of Social Security, on January 27, 2017. See Fed. R. App. P. 43(c)(2).

received. Casey sought a waiver, but an administrative law judge denied his request. Six months later, Casey submitted an untimely request to the Appeals Council seeking review of the ALJ's decision. Casey argued that he had good cause for his delay. The Appeals Council seemed to agree. On April 12, 2012, the Council extended Casey's deadline to submit evidence or a statement in support of his waiver claim. But on July 17, 2013, the Appeals Council reversed course, informing Casey that it had dismissed his request for review because there was "no good cause to extend the time for filing." Casey then sued the Acting Commissioner of Social Security in district court. The Commissioner moved to dismiss, and a magistrate judge recommended granting the Commissioner's motion. The district judge adopted the magistrate's recommendation and dismissed the case.

The district court erred. The action by the Appeals Council in first granting and then retroactively denying Casey's good cause request was arbitrary, having the effect of an unfair bureaucratic bait-and-switch. To be sure, the Council had discretion to determine initially whether Casey offered good cause for his late administrative appeal. See 20 C.F.R. §§ 404.968(b), 404.911. But having granted Casey's request, the Council could not simply change its mind and dismiss Casey's appeal on the theory that he had not adequately justified his delay, after leading him on for over a year without suggesting he needed to provide more information, an affidavit, or anything else by way of support. We reverse the judgment of the district court and remand with instructions to remand this matter to the agency for administrative proceedings consistent with this opinion.

I.  *Procedural History*

We recount the salient facts, which are drawn from the administrative record and from Casey's complaint. We take Casey's allegations as true in reviewing the district court's judgment of dismissal. In 1979, Casey began receiving Social Security disability insurance benefits. Two years later, he entered the federal Witness Protection Program. According to Casey, the United States Marshals Service initially informed him that he could not simultaneously receive both his witness protection stipend and his disability benefits. Later, however, an agent of the Marshals Service allegedly told Casey that he could receive both income streams and that, as remuneration for cooperating with the government, he would continue to receive disability benefits throughout his natural life. He apparently received both streams of income for some time; he later received disability benefits while simultaneously earning income.

In 2009, the Social Security Administration notified Casey that, in light of his earnings history, he had been overpaid $333,893.90 in disability benefits. Casey did not seek timely reconsideration of that determination, which became final sixty days after he received the notice. See 20 C.F.R. §§ 404.909(a), 404.905. Instead, in either February or August 2010 (the record is unclear), Casey requested a waiver of the overpayment pursuant to 42 U.S.C. § 404(b)(1), which provides: "In any case in which more than the correct amount of payment has been made, there shall be no … recovery … from[] any person who is without fault if such … recovery would defeat the purpose of [the Social Security Act] or would be against equity and good conscience." See also 20

C.F.R. § 404.506 (describing process for submitting waiver request).

The Social Security Administration denied Casey's waiver request in November 2010. After an evidentiary hearing, an administrative law judge upheld that denial in an August 25, 2011 decision. Though Casey had argued that he was entitled to rely on the Marshals Service's assurance that he would receive disability benefits for life, the ALJ disagreed, finding that there was "no proof" to substantiate the alleged promise and that, in any event, Casey had "many opportunities and incentive [*sic*] to contact the Social Security Administration to inquiry [*sic*] into his receipt of [disability] benefits." The ALJ also cited Casey's "ability to repay the overpayment" as a "significant issue." (The ALJ had calculated Casey's gross monthly income at over $15,000 and had noted that Casey and his wife owned real property with a net value of almost $600,000.)

After receiving notice of the ALJ's August 25, 2011 adverse decision, Casey had sixty days to seek further review by the Appeals Council. See 20 C.F.R. § 404.968(a). He did not submit a timely request for review. However, in a March 2, 2012 letter, Casey's attorney at the time, Arman Sarkisian, invoked the good cause exception for untimely requests. See §§ 404.968(b), 404.911, 404.900(b). Sarkisian advised the Appeals Council that neither he nor his firm had received a copy of the ALJ's decision and that he had learned of the decision only after contacting the ALJ's chambers "several months" after the decision issued. Sarkisian asked the Council to (1) find that Casey had good cause for a late filing, (2) grant Casey additional time to secure information, and (3) evaluate the appeal as if it had been timely.

In an April 12, 2012 letter, the Appeals Council informed Sarkisian that it had "granted your request for more time" before acting on Casey's case, and it invited him to submit evidence or legal argument within twenty-five days, with the caveat that "[a]ny more evidence must be new *and* material to the issues considered in the hearing decision dated August 25, 2011." Sarkisian requested additional extensions on April 24, 2012 and May 22, 2012, both of which were granted. Sarkisian requested a further extension on June 25, 2012: this time, the agency denied his request, informing him that it would proceed with its action based on the existing record.

On July 17, 2013, the Appeals Council dismissed Casey's request for review. The Appeals Council did not, however, address the merits of Casey's request for reconsideration. Instead, in its order, the Council characterized Casey's prior correspondence as requesting additional time to "complete a 'good cause' statement and to provide the Administration with additional evidence regarding his late filing." "To date," the Council wrote, "it does not appear that [Casey] has provided the 'good cause' statement he indicated would be forthcoming." The Council concluded there was "no good cause to extend the time for filing."

Casey then brought suit under 42 U.S.C. § 405(g), a statute authorizing judicial review of any "final decision" by the Commissioner of Social Security. The Commissioner moved to dismiss on the theory that Casey had failed to exhaust his administrative remedies. According to the Commissioner, although the Appeals Council afforded Casey "an opportunity to show good cause for his untimely request for review," he failed to do so. The Commissioner contended that because Ca-

sey "did not comply with the agency's deadlines and procedural rules, and thus failed to properly exhaust his administrative remedies," the district court had "no authority under section 405(g) to review the Commissioner's decision." In opposition, Casey pointed out that (1) the Appeals Council had granted his good cause request in its April 12, 2012 letter and (2) the Council's dismissal order actually advised him of his right to seek judicial review. Nevertheless, the magistrate judge recommended that the district court dismiss Casey's complaint. Citing our decision in *Boley v. Colvin*, 761 F.3d 803 (7th Cir. 2014), the magistrate judge recognized that the district court had jurisdiction to review the Appeals Council's dismissal order. However, because Casey's complaint focused on the *merits* of his waiver claim rather than the *timeliness* of the claim, the judge concluded that Casey did "not seek review of the Appeals Council's good cause determination."

Adopting the recommendation over Casey's objections, the district judge wrote that the "only reviewable decision" was the agency's July 17, 2013 dismissal for failure to demonstrate good cause, and "Casey's complaint cannot fairly be read as seeking review of this decision." The district judge dismissed the suit, and Casey filed a timely notice of appeal. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291.

II. *Analysis*

  A. *The Dismissal Order*

Under 42 U.S.C. § 405(g), a Social Security claimant may obtain judicial review of any "final decision" of the agency by suing the Commissioner in a federal district court within sixty days following notice of the agency's decision. The court has

the power to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing" the agency's decision. *Id.* We review *de novo* the district court's judgment. See *Bates v. Colvin*, 736 F.3d 1093, 1097–98 (7th Cir. 2013); *Hickman v. Apfel*, 187 F.3d 683, 687 (7th Cir. 1999). We likewise review *de novo* the agency's legal conclusions, though we review its factual findings deferentially, upholding the findings if they are supported by substantial evidence. See *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014); *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

This case presents an unusual twist, however, because the Appeals Council did not decide the merits of Casey's waiver claim. Instead, the Council's "final decision" was its dismissal of Casey's request for review based on its purported finding that Casey lacked good cause for his delay. As we recognized in *Boley*, the agency's good cause determination is itself a reviewable decision. See 761 F.3d at 808 (remanding to district court to "decide whether substantial evidence, and appropriate procedures," supported decision that claimant lacked "good cause" for delay in seeking intra-agency review). The district court acknowledged *Boley*, but it read Casey's complaint as focusing on the merits rather than the timeliness of his waiver claim. In the district court's view, Casey's "failure to seek review of the determination that good cause is lacking" tied the court's hands. On appeal, the Commissioner concedes that the district court had jurisdiction to review the Appeals Council's dismissal order. But the Commissioner echoes the district court's analysis, chiding Casey for failing to allege facts in his complaint "showing that the request for review

was timely filed or that he had 'good cause' for his untimely filing."[1]

But why should Casey have alleged such facts? Notwithstanding the Appeals Council's baffling dismissal order, the Council plainly granted Casey's request for additional time to pursue his administrative appeal. In its April 12, 2012 letter,

---

[1] The Commissioner cites but does not discuss 20 C.F.R. § 404.972, which provides that the "dismissal of a request for Appeals Council review is binding and not subject to further review." The regulations distinguish between a *dismissal*, see § 404.971, which is supposedly not reviewable, and a *denial*, see § 404.981, which is treated as a final administrative adjudication. In *Boley*, however, we held that a claimant whose administrative appeal was dismissed as untimely was "entitled to judicial review of her contention that the agency mishandled her case." 761 F.3d at 806. In *Boley*, an ALJ dismissed the claimant's request for a hearing, and the Appeals Council denied further review. See *Boley v. Astrue*, No. 3:12-cv-27-RLY-WGH, 2013 WL 275891, at *1 (S.D. Ind. Jan. 24, 2013). The procedural posture in this case differs slightly. Here the dismissal order came from the Appeals Council itself. But the principle of *Boley* applies with equal force: 42 U.S.C. § 405(g) "allows judicial review when a claim has been presented and finally decided," 761 F.3d at 806, even when that final decision is (or purports to be) a dismissal for untimeliness. See *Davis v. Colvin*, No. 15-cv-610-wmc, 2016 WL 5888670, at *2 (W.D. Wis. Aug. 30, 2016) (applying *Boley* and holding that plaintiff could obtain judicial review of Appeals Council's good cause determination and dismissal order); cf. *Craven v. Colvin*, No. 16-cv-53-wmc, 2017 WL 28094, at *4 (W.D. Wis. Jan. 3, 2017) ("[N]othing about the … reasoning in *Boley* provides a basis for distinguishing between a situation in which an ALJ denies a request for a hearing after a finding of no good cause … from a situation in which the ALJ or Appeals Council dismisses an untimely request for reconsideration after a finding of no good cause … ."). In light of our discussion here, the agency might want to rethink the Acquiescence Ruling it issued in response to *Boley*, in which it adopted an exceptionally narrow interpretation of our holding in that case. See SSAR 16-1(7), 2016 WL 1029286 (Mar. 14, 2016).

in response to Casey's request for review and good cause statement, the Council wrote: "We have granted your request for more time before we act on your case." The Council then invited Casey to submit new evidence—not on the timeliness issue, but only evidence "material to the issues considered in the hearing decision dated August 25, 2011." That hearing decision had nothing to do with timeliness or good cause for delay—it was a decision on the merits of Casey's waiver request.

Later exchanges between attorney Sarkisian and the Appeals Council reinforce our conclusion that the Council approved Casey's good cause request on April 12, 2012. On April 24, 2012, Sarkisian asked for additional time to gather documents, noting that the Council had provided his office with "correspondence granting an appeal of an unfavorable decision rendered against Mr. Casey." In a response issued that same day, the Council extended Casey's deadline by thirty days, and it again invited him to "send … more evidence or a statement about the facts and the law in this case." The Council made no effort to clarify the action it had taken through its letter of April 12 or to correct Sarkisian's understanding of the administrative review process. Again, on May 22, 2012, Sarkisian requested additional time to "provide the Council with additional information before it acts upon the appeal of Mr. Casey's case." And again, in a letter dated May 31, 2012, the Council extended Casey's deadline while giving no indication that it was still deliberating over his good cause showing. Not once did the Council direct Casey to "complete a 'good cause' statement" or "provide … additional evidence regarding his late filing"—yet the Council cited Casey's failure to supply such evidence in dismissing his request for review.

The district court acknowledged that the Council's April 12, 2012 letter "leaves a lot to be desired," as it "fails to make a distinction between counsel's request that the Appeals Council find good cause and counsel's request that additional time be granted to produce additional evidence relevant to the merits of Casey's claim." The court likewise acknowledged that the language in the letter "does suggest that the purpose of the additional evidence to be produced would go to the merits of Casey's claim." Nonetheless, the court concluded that the April 12 letter did not "make an affirmative finding that Casey had demonstrated good cause."

We respectfully disagree. Particularly when read alongside Sarkisian's initial submission, the most reasonable interpretation of the April 12 letter is that it granted each of Casey's three requests: i.e., that the Council "grant good cause for late filing, allow additional time to secure additional information, and evaluate the appeal as if … timely made." The agency cannot nullify the effect of its April 12 letter by mischaracterizing that letter in court. And because the Council granted Casey's good cause request, Casey had no reason to plead facts in his complaint in support of relief that had already been provided. Put differently, the question of good cause was settled in Casey's favor on April 12, 2012. Casey had no reason to relitigate that question in federal court.[2]

---

[2] We agree with the district court that Casey's primary focus in his two-page complaint is on the merits of his waiver claim. We also agree that we cannot properly assess the merits at this stage because the Appeals Council, after granting Casey's good cause request, failed to address the merits in the first instance. The only final decision before us is the Council's dismissal order, and that order has nothing to do with the merits. But while Casey's complaint could have been more artfully drafted, it is the

The Commissioner makes several arguments on appeal that warrant some discussion here. First, the Commissioner contends that Casey's good cause showing in his March 2, 2012 letter was insufficient. The good cause showing was addressed to the Council's discretion, and the Council exercised that discretion to grant Casey's good cause request. Whether the Council wishes with the benefit of hindsight that it had not done so is irrelevant. But we also think that Casey made a viable showing of good cause to support his tardy administrative appeal. Attorney Sarkisian represented that he never received a copy of the ALJ's August 25, 2011 decision and learned of the decision only after contacting the ALJ's chambers. (On appeal, Casey maintains that he also does not recall "ever receiving the August 25, 2011 Notice," though he does not appear to have made this point before the Appeals Council or the district court.) Sarkisian added that his firm had been trying to secure additional information to support Casey's claim but had been stymied in its efforts. The regulations contemplate that similar explanations may qualify as just cause for delay. See 20 C.F.R. § 404.911(b) ("Examples of circumstances where good cause may exist include, but are not limited to, the following situations: … You were trying very hard to find necessary information to support your claim but did not find the information within the stated time periods. … You did not receive notice of the determination or de-

---

agency—not Casey—that is ultimately responsible for the procedural confusion in this case. While we could remand to the district court with instructions to allow Casey to amend his complaint, that would be a pointless formality. This action must be returned to the agency for proper administrative review on the merits.

cision.”). While the Commissioner complains to us that Casey’s good cause showing is based on an unsworn, unverified letter by his attorney, the Appeals Council never asked Casey to submit more reliable evidence. It never asked for an affidavit or a declaration. Nothing in the regulations requires the claimant to supply such evidence on his own initiative. We assume the Appeals Council had every right to request additional proof. Having granted his request, though, it cannot fault Casey for failing to divine what sort of additional evidence it might deem necessary to support a decision the Council had already made in his favor.

Next, the Commissioner observes that the Appeals Council processes many thousands of requests for review every year—a staggering 173,849 requests during fiscal year 2012 alone. Consequently, the Council must rely on boilerplate correspondence. In the Commissioner’s view, the onus is on the claimant to follow up when “ambiguities in such letters … arise.” We recognize the challenges that the Social Security Administration and many other federal agencies face as they attempt to carry out their broad mandates with limited resources. But we will not shift the burden to claimants to read between the lines or chase down agency officials just to confirm whether a clear letter actually means what it says. That would only add burdens to both claimants and agency officials. The Appeals Council’s April 12, 2012 letter in this case was clear: Casey had been granted more time to litigate the merits of his waiver claim.

At oral argument, counsel for the Commissioner also noted that the April 12, 2012 letter was drafted (or at least signed) by a legal assistant for the agency. In arguing that the letter, despite its plain language, merely extended Casey’s

window to make his good cause showing, counsel said he found it "highly unlikely" that the Appeals Council would "let a legal assistant make a finding about good cause." We have no idea whether this legal assistant had the independent authority to grant Casey's request, whether she sought and secured approval, and/or whether her letter complied with agency protocols. But in general—and certainly in a case like this one—a Social Security claimant may reasonably rely on the clear representations of the agency, printed on letterhead and dispatched in response to the claimant's inquiry. The agency is, after all, in a superior position to monitor its employees and to ensure that their communications are accurate.

To sum up, we share the district court's view that it had jurisdiction under 42 U.S.C. § 405(g) to review the Appeals Council's "final decision" of July 17, 2013. We disagree with the district court's understanding as to the nature of that decision. It was not a good faith finding that Casey failed to justify his tardy request for review. It was instead an inexplicable U-turn by an agency that had the effect of a bureaucratic bait-and-switch after more than a year. The Council's dismissal order was not supported by "substantial evidence[] and appropriate procedures," *Boley*, 761 F.3d at 808, but was instead an arbitrary decision that we now set aside. See 5 U.S.C. § 706 ("[A] reviewing court shall … hold unlawful and set aside agency action … found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]").[3]

---

[3] This case differs from *Boley* in a significant respect, and that difference informs the relief that we grant Casey. In *Boley*, the agency dismissed the claimant's untimely request for a hearing, and the district court dismissed the claimant's subsequent complaint. We vacated and remanded with instructions for the district court to consider whether "substantial evidence,

B.  *The Waiver Claim*

We close by briefly addressing Casey's waiver claim. Because the Appeals Council granted Casey's good cause request but then arbitrarily dismissed his administrative appeal, there is no "final decision" on the underlying merits within the meaning of 42 U.S.C. § 405(g). It is therefore inappropriate for us to decide whether Casey is entitled to a waiver of the $334,000 overpayment: that is a question for the agency to consider on remand. The bar to prevail on such a claim is rather high. The claimant must show both that he was without fault with respect to the overpayment and that recovery by the agency would either defeat the purpose of the Social Security Act or violate equity and good conscience. 42 U.S.C. § 404(b)(1); 20 C.F.R. § 404.506. Given those hurdles, Casey may have a rocky road ahead.

That said, we think Casey's waiver claim is at least plausible. Casey alleged in his complaint that a local office of the Social Security Administration reviewed his case "at least five (5) times over the previous ten (10) years" and that the international office interceded on his behalf to forestall action by the local office. On appeal, Casey has presented an assortment of documents showing that the agency was aware of earnings posted to his account between 1968 and 2004 and that Casey

and appropriate procedures," supported the agency's decision that the claimant lacked good cause for her delay. 761 F.3d at 804, 808. Here, by contrast, the agency first found that Casey had good cause for his delay and then (apparently) changed its mind. As we set aside that arbitrary action and restore the agency's prior good cause determination, there is nothing left for the district court to do at this juncture. The agency itself must take up the merits of Casey's waiver claim on remand.

had submitted income information to the agency upon request.[4] While the fact of Casey's overpayment is *res judicata* given that Casey did not request reconsideration of the agency's initial determination, see 20 C.F.R. § 404.905, the agency's knowledge of his income and continued payment of benefits over a period of many years—coupled with the Marshals Service's alleged assurance that Casey was entitled to benefits for life—may be relevant to a finding whether Casey was without fault. See § 404.507 ("In determining whether an individual is at fault, the Social Security Administration will consider all pertinent circumstances … ."); see also §§ 404.510(b), 404.510a (individual is without fault where individual relied on erroneous information from government agency that individual reasonably believed was involved with benefits administration); § 404.510(g) (individual is without fault with regard to deduction overpayment where individual continued receiving benefits after notifying Social Security Administration of event that should have caused deductions, provided that individual believed in good faith he was entitled to benefits).[5]

---

[4] Casey does not appear to have presented these documents to the district court. No certified administrative record was filed in this matter, so we cannot confirm whether the ALJ took account of the documents in reaching his decision. However, as the documents appear to be Social Security records, we assume the agency has access to them and may consider them in evaluating Casey's waiver claim on remand. Cf. 20 C.F.R. §§ 404.983, 404.984(a) (agency may take up any issues relating to claimant's case on remand, regardless whether those issues were raised in prior administrative proceedings).

[5] Under 42 U.S.C. § 404(b)(1), it is not enough that a waiver claimant was without fault: the agency will grant a waiver only where requiring repay-

In any event, Casey's uncertain prospects of success on the merits do not excuse the Appeals Council's arbitrary dismissal of his request for review. We reverse the judgment of the district court and remand with orders to remand this matter to the Social Security Administration for further proceedings. On remand, the Appeals Council shall render a final decision on the merits of Casey's waiver claim or shall remand for further consideration by an ALJ pursuant to 20 C.F.R. § 404.983, without revisiting the timeliness of Casey's request for review.

REVERSED and REMANDED.

---

ment would defeat the purpose of the Social Security Act or would be inequitable. The ALJ found that Casey could not satisfy this separate requirement, as he had sufficient income and assets to cover the $334,000 overpayment. In his opening brief in this court, however, Casey writes that he is "61 years old and without a regular source of income." We cannot resolve this discrepancy, but on remand the agency may take up the matter of Casey's income and net worth.