In the

# United States Court of Appeals
## for the Seventh Circuit

No. 20-3508

GERALD FITSCHEN,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 2:19-cv-02259 — **Colin S. Bruce**, *Judge.*

ARGUED FEBRUARY 23, 2022 — DECIDED NOVEMBER 14, 2023

Before SYKES, *Chief Judge*, and FLAUM and KANNE, *Circuit Judges*.*

SYKES, *Chief Judge*. In February 2000 the Social Security Administration ("SSA") found Gerald Fitschen eligible for

* Circuit Judge Kanne died on June 16, 2022, and did not participate in the decision of this case, which is being resolved under 28 U.S.C. § 46(d) by a quorum of the panel.

disability benefits and began sending him monthly benefits checks. Fitschen returned to work in January 2001 but continued to receive benefits for a nine-month "trial work period." *See* 42 U.S.C. § 422(c)(4). When the trial period expired, he could continue to work and receive benefits for an additional 36-month period but only if his wages did not exceed the level at which a person is deemed to be capable of engaging in substantial work activity. *Id.* § 423(a).

The SSA conducted a continuing disability review in March 2003 and determined that Fitschen had engaged in substantial work and should not have received benefits for much of 2002 and 2003. The SSA notified him of his overpayment liability but also told him that his benefits would continue because he had ceased substantial work in October 2003. Fitschen again returned to work in January 2004 but did not report the change in his work activity or earnings until the agency initiated another review in 2007 and placed his benefits in suspension.

The SSA has a statutory duty to recover overpayments but may waive recovery if the recipient was without fault and other criteria are met. *See id.* § 404(a)(1), (b)(1). Fitschen asked the agency to waive recovery. After protracted proceedings before three different administrative law judges and two administrative appeals, in 2019 the Commissioner of Social Security issued a final order finding Fitschen liable for an overpayment of $50,289.70 and declining to waive recovery because he was not without fault. The district court upheld that decision.

On appeal Fitschen raises two arguments. First, he contends that the agency is procedurally barred from recovering the overpayment because it failed to comply with the re-

quirements of its "reopening" regulation. This argument wrongly assumes that the reopening rules apply in this situation. They do not. The SSA's overpayment assessment did not "reopen" Fitschen's initial eligibility determination or any later determination concerning the continuation or recomputation of his benefits. Second, Fitschen claims that he was entitled to a waiver of his repayment obligation. This argument is also meritless; the Commissioner's finding that Fitschen was at fault is supported by substantial evidence. We therefore affirm the judgment.

## I. Background

More than 24 years ago, Gerald Fitschen, an electrician, applied for Social Security disability benefits after he was diagnosed with advanced cancer and stopped working. The SSA approved his application, and he began receiving benefits in February 2000. Fitschen returned to work in January 2001. A few months later, he notified his local SSA office of his return to work, and the agency told him that his benefits would continue for a nine-month "trial work period." The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity" because of a qualifying physical or mental impairment. 42 U.S.C. § 423(d)(1)(A). A trial work period, authorized under § 422(c), is "a period during which [a claimant] may test [his] ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a).

When a trial work period ends, a recipient may continue to work for an additional 36 months without losing benefits but *only* if his monthly earnings do not exceed the level of "substantial gainful activity" as defined in the Act and regulations. 42 U.S.C. § 423(a)(1); 20 C.F.R. §§ 404.1572–74,

.1492a(a). Fitschen continued to work after his trial work period ended in October 2001. His disability payments continued too—subject to this earnings limitation—and he was required to tell the agency if his work activity changed in any way that might affect his benefits.

In March 2003 the agency initiated a continuing disability review. The SSA periodically conducts these reviews to determine if a beneficiary is still disabled and entitled to receive benefits. 20 C.F.R. § 404.1589. A beneficiary must continue to satisfy both medical and employment-related criteria for receipt of benefits, so the 2003 review covered the status of Fitschen's medical and employment circumstances; the agency requested information from him on both. Based on this review, the SSA concluded that Fitschen still met the medical criteria for continuation of benefits. However, based on his work history for four employers between January 2001 and September 2003, the agency determined that his disability had ended in October 2001 when his trial work period expired.

That determination was administratively affirmed in October 2003, and on October 20 the SSA sent Fitschen a Notice of Disability Cessation. The notice alerted him that because he had received benefits while engaged in substantial gainful activity for approximately two years after the expiration of his trial work period, he owed the SSA $27,746.30—the total (to that date) of the overpaid benefits. In the same notice, the agency told Fitschen that he had become re-entitled to benefits beginning that same month because he was no longer engaged in substantial work. The notice advised him that his benefits would continue through September 2004, but it also included several important

reminders: (1) "Your disability ends if your work activity shows your ability to do substantial work"; (2) "[y]ou must tell us right away about any changes that may affect your benefits"; and (3) "[i]f you do not [tell us about work changes], you may have to repay any benefits you are not due."

Two weeks after Fitschen received this notice, he returned 11 uncashed benefits checks. On December 1 the SSA sent Fitschen another notice reminding him of his duty to "tell us right away" if he returned to work or if his work activity or pay changed. The notice explained the rules for working while receiving benefits and reminded Fitschen that benefits would stop if he earned more than the monthly level that determines a person's ability to engage in substantial gainful activity.

On December 9 the agency notified Fitschen that the returned checks had reduced his overpayment liability from $27,746.30 to $11,647.50 and that the SSA would recover the remainder by withholding his benefits checks starting in 2004. The SSA then withheld Fitschen's benefits from February through September of 2004 before returning him to full pay status in October. But there was a problem. Unbeknownst to the SSA, Fitschen had resumed substantial work in January 2004, so he was not entitled to the withheld benefit checks in the first place. There is no indication in the record that Fitschen reported his substantial work activity as required.

Fitschen thereafter continued to receive benefits while he engaged in substantial work. From 2002 through 2006, the SSA sent Fitschen annual letters notifying him that based on his prior year's earnings—that is, the earnings known to the agency—his monthly benefit would increase. Included with

these annual letters were lump-sum payments reflecting the retroactive application of the increase. These letters, formally called Notices of Change in Benefits, are computer-generated form letters sent periodically after an individual becomes entitled to benefits. 20 C.F.R. §§ 404.280, .285. The agency generates these notices when the annual recomputation of benefits results in an increase in the beneficiary's primary benefit; the recomputations are performed automatically based on available earnings data. *Id.* §§ 404.280, .281(e), .285.

The SSA did not review Fitschen's file again until May 27, 2007, after an earnings alert triggered a second continuing disability review. The agency asked Fitschen to complete Form SSA-821 detailing his work history from 2002 to 2007. On June 13 Fitschen submitted the signed form with the required information. That same day he provided a sworn statement to his local SSA field office:

> I returned to work in 2001 as an electrician for Local 134. I reported my earnings timely and *knew that I was not entitled to the disability benefits I was receiving.* In fact, I returned check[s] to SSA every month from December 2002 [to] October 2003. I continued to receive mail stating they were finally going to cut me off. But this never happened. I then started to receive a [SSA-1099 form] in which I perceived that to mean that I had to pay taxes on these disability payments, so I then began to cash these checks, as I did not think it was fair to get taxed on money I was not to use. (Emphasis added.)

The SSA had indeed sent Fitschen annual SSA-1099 forms for tax purposes showing the total amount of benefits he had received each year.

The following month—June 2007—the SSA suspended Fitschen's benefits pending an investigation. He did not object to the suspension. In the lengthy review that followed, the SSA learned that between January 2004 and June 2007, Fitschen's average monthly earnings were between $4,261 and $6,341, well above the amount set for determining substantial gainful activity. In July 2009, the agency sent Fitschen a final decision explaining that because he had engaged in substantial work activity, he had not been entitled to benefits from January 2004 onward. The next month the SSA assessed a total overpayment liability of $70,369.60.

Fitschen responded to the overpayment notice by returning an additional seven uncashed benefits checks and asking the agency to waive recovery of the balance of the overpayment. The SSA denied the waiver request. Fitschen sought reconsideration; the agency denied that request too.

Fitschen then requested a hearing before an administrative law judge ("ALJ"). In his hearing request, he stated that because the "SSA and myself are responsible for the overpayment, there should be a meeting somewhere to resolve the situation." He argued that the agency should waive recovery of the overpayment, in part because he was not at fault for it.

On August 4, 2011, the ALJ confirmed the overpayment liability and found that Fitschen was not eligible for a waiver of repayment:

> Because the claimant knew that he was not en-titled to the benefits, but kept and cashed the checks anyway, he is at fault in causing the overpayment. Although I have sympathy with the claimant's conundrum when faced with the 1099 form from the [SSA] and his resultant ap-parent tax liability, this does not justify the claimant's taking money that he knew … was not his. Instead, it would further illustrate the claimant's need to immediately clear up the situation with the [agency] before additional problems develop. For these reasons, I con-clude that the claimant was at fault in causing and accepting the overpayment, and, thus, waiver is not possible.

Fitschen sought administrative review of the ALJ's deci-sion, and in May 2013 the SSA Appeals Council remanded the case for a new calculation of the overpayment amount. Another ALJ held a supplemental hearing and in November 2014 issued a decision assessing an overpayment liability of $50,289.70. Fitschen accepted the new calculation but sought further administrative review concerning his request for a waiver of repayment. The Appeals Council vacated the second ALJ's decision and ordered a new hearing because the agency lost the hearing tape. In 2016 while the matter remained before a third ALJ, Fitschen paid the debt in full but continued to pursue his claim for a waiver. (That is, he was now asking to be *repaid*.)

In July 2018 a third ALJ confirmed Fitschen's overpay-ment liability of $50,289.70 and again found that he was at fault and thus was not eligible for a waiver of his repayment

obligation. Fitschen again sought review by the Appeals Council, reiterating his request for a waiver and raising a new procedural argument: He claimed that the agency was procedurally barred from recovering the overpayment because it violated its reopening regulation by reopening his initial eligibility determinations without good cause. In response the agency argued that the reopening regulation did not apply and that Fitschen was ineligible for a waiver based on his own admissions that he knew he was not entitled to continued benefits based on his earnings.

On July 23, 2019, the Appeals Council issued a final order affirming Fitschen's overpayment liability of $50,289.70 and denying his request for a waiver because he was not without fault for the overpayment. The Appeals Council also rejected Fitschen's procedural argument, explaining that the reopening requirements did not apply because the overpayment assessment did not "reopen" any prior eligibility determination or benefits recomputation.

The Appeals Council's order constituted the final decision of the Commissioner of Social Security, so Fitschen's remaining recourse was to seek judicial review under 42 U.S.C. § 405(g). He did so. Ruling on cross-motions for summary judgment, the district judge rejected Fitschen's argument about the reopening requirements, finding it unsupported by the statutory and regulatory framework. The judge also concluded that the agency's denial of Fitschen's waiver request was supported by substantial evidence—namely, his own statements admitting that he knew he was not entitled to the benefits he was receiving but kept the money anyway. The judge accordingly entered judgment for the Commissioner, and Fitschen appealed.

## II. Discussion

We review the summary-judgment order de novo, using "the same deferential standard of review as the district court." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The Social Security Act limits judicial review to final decisions of the Commissioner, § 405(g), and here the Appeals Council's July 2019 decision is the Commissioner's final decision, *see Schoenfeld v. Apfel*, 237 F.3d 788, 792 n.2 (7th Cir. 2001). The scope of review is quite limited: we must uphold the Commissioner's decision if it is supported by substantial evidence and no error of law occurred. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *see also* § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive … .").

The substantial-evidence standard is not demanding: the term "substantial evidence" as used here means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walker v. Berryhill*, 900 F.3d 479, 482 (7th Cir. 2018) (quotation marks omitted). We review the record as a whole but do not substitute our own judgment for that of the Commissioner; we do not reconsider facts, reweigh the evidence, resolve conflicts in the evidence, or decide questions of credibility. *Schoenfeld*, 237 F.3d at 792.

Fitschen raises the same two issues on appeal that he raised below. He contends that the SSA did not comply with the requirements of its reopening regulation and thus is barred from recovering the $50,289.70 overpayment. He also argues that he was not at fault for the overpayment and is therefore entitled to a waiver of repayment.

**A. Reopening**

There is no doubt that Fitschen was overpaid.[1] His first challenge to his repayment obligation is a procedural one: he contends that the overpayment assessment is invalid because the agency failed to comply with the requirements of its reopening regulation.

This argument proceeds in two steps. Fitschen first argues that his initial 2000 eligibility determination, his October 2003 eligibility determination (at the end of the first continuing disability review), and the annual recomputation notices were all "initial determinations" under the relevant regulations and thus were subject to the agency's rule on administrative finality. There's no dispute about this point, so we don't need to dwell on it. Fitschen next argues that the agency's overpayment assessment effectively "reopened" one or more of those initial determinations, triggering the agency's reopening regulation, which it did not follow. This argument misunderstands the regulatory scheme, as we explain below.

The relevant regulations "establish a scheme for ensuring finality in the [Commissioner's] determinations." *Dugan v. Sullivan*, 957 F.2d 1384, 1387 (7th Cir. 1992). First, an "initial

---

[1] An overpayment occurs whenever a claimant receives money from the SSA to which he is not entitled. 20 C.F.R. § 404.501(a). The Supreme Court has recognized that each beneficiary bears an ongoing burden of proving that he remains entitled to benefits even after the agency has initially awarded benefits. *Mathews v. Eldridge*, 424 U.S. 319, 336 (1976). A beneficiary's ongoing burden of proof is the primary reason why the SSA requires all beneficiaries to report changes in their work and earnings. 20 C.F.R. § 404.1588(a). It's undisputed that Fitschen was overpaid in the amount of $50,289.70.

determination" is an agency decision that is subject to administrative or judicial review. 20 C.F.R. § 404.902. Examples include, among other things, determinations regarding a claimant's "entitlement or [his] continuing entitlement to benefits," "the amount of [his] benefit," and any "recomputation of [his] benefit." *Id.* Everyone agrees that the agency's 2000 and 2003 eligibility determinations and the 2002–2006 annual recomputation notices are considered separate and distinct initial determinations.

The SSA may reopen such determinations within specific time limits and under certain conditions: (1) within one year for any reason; (2) within four years for good cause; and (3) at any time if the initial determination was obtained by fraud or similar fault. *Id.* § 404.988. Fitschen maintains that the SSA's overpayment assessment effectively "reopened" a prior eligibility determination or benefits recomputation after the one-year grace period without a showing of good cause or fraud. The SSA responds that the reopening regulation did not apply. We agree with the agency.

When the SSA determines that a disability claimant is eligible for benefits and starts sending monthly payments, the agency must periodically conduct a continuing disability review to determine if the benefits recipient remains eligible. § 404.1589. An overpayment assessment following a continuing disability review is itself a separate initial determination, § 404.902(a), (k), and is subject to judicial review (as this case attests). In conducting a continuing disability review, the agency may assess the beneficiary's current medical status (to determine whether he still meets the relevant criteria for disability); the beneficiary's current work status (to determine whether his earnings are still low enough to qualify for

benefits); or both. The agency performs a work review when it learns that a beneficiary has returned to work or when substantial earnings have been posted to his wage record. 20 C.F.R. § 404.1590(b). The SSA may also perform a work review at any time to determine if a recipient's earnings data shows that he is able to perform substantial gainful activity no matter how long he has been receiving benefits. *Id.* § 404.1590(i)(4).

Fitschen contends that the continuing disability reviews and the subsequent overpayment assessment had the effect of "reopening" his initial 2000 eligibility determination (or perhaps the 2003 eligibility determination, or one or more of the annual benefits recomputations). Not so. An overpayment occurs whenever a beneficiary receives more money than he is entitled to, *id.* § 404.501(a), and the SSA is statutorily *required* to recover overpayments, 42 U.S.C. § 404(a)(1). An overpayment inquiry does not revisit and revise a prior eligibility determination based on information showing that it was incorrect when made. Rather, an overpayment inquiry is prompted by changes in a recipient's medical or work status occurring *after* an eligibility determination has been made. Putting the point somewhat differently, an overpayment inquiry *assumes* the correctness of the underlying eligibility determination; the inquiry instead examines whether changes in the recipient's medical or work status *since* that determination—here, Fitschen's substantial gainful activity after he returned to work—have resulted in a subsequent overpayment.

Fitschen relies on a number of cases applying the SSA's reopening regulation, but all involve initial eligibility determinations that were reopened because they were incorrect at

the time they were made. *See Dugan*, 957 F.2d at 1386 (holding that a reopening was required where the SSA considered anew earnings information that it possessed at the time of its initial determination); *Heins v. Shalala*, 22 F.3d 157, 161–62 (7th Cir. 1994) (holding that the SSA had to reopen an eligibility determination that was made on the basis of a fraudulent application); *see also Fugate v. Comm'r of Soc. Sec.*, 776 F.3d 389, 392 (6th Cir. 2015) (finding that a reopening was required because the initial decision was based on a mathematical error); *Kassin v. Sec'y of Health & Human Servs.*, 945 F.2d 114, 114 (6th Cir. 1990) (holding that the SSA could reopen an initial assessment that did not account for all of the facts at the time); *Fowler v. Bowen*, 876 F.2d 1451, 1455 (10th Cir. 1989) (finding reopening valid where the claimant fraudulently misrepresented his earnings in his initial application for benefits); *Barone v. Bowen*, 869 F.2d 49, 49 (2d Cir. 1989) (holding that the SSA was required to reopen a determination that it sought to revise on the basis of facts that were originally available); *Sotiriades v. Mathews*, 546 F.2d 1018, 1020 (D.C. Cir. 1976) (noting that a determination of eligibility had to be reopened because the claimant withheld information "at the time she applied for benefits").[2]

In contrast, here Fitschen's eligibility determinations were correct when made. The overpayment assessment accounted for later changes in his work status—i.e., his

---

[2] Fitschen also cites *Schwingel v. Harris*, 631 F.2d 192 (2d Cir. 1980), but that case does not help him. *Schwingel* did not concern the applicability of the reopening regulation. The case concerned the "without fault" requirement for a waiver of an overpayment; more specifically, the issue was whether the beneficiary had been denied a fair hearing on the issue of fault. *Id.* at 196.

substantially gainful employment after he returned to work. The SSA's reopening regulation did not apply.[3]

## B. Fault and Waiver

As we've noted, the SSA has a statutory obligation to recoup overpayments, either by adjusting a recipient's future benefits payments or recovering the overpayment from the recipient. 42 U.S.C. § 404(a). But the statute also contains a waiver provision: the agency may not recover an overpayment—either directly or by offsetting future payments—if the recipient "is without fault" and recovery of the overpayment "would defeat the purpose of [the Social Security Act] or would be against equity and good conscience." § 404(b)(1). The recipient bears the burden of establishing that both requirements have been met. *Banuelos v. Apfel*, 165 F.3d 1166, 1170 (7th Cir. 1999), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999).

A finding of fault in connection with an overpayment can be based on the recipient's "[f]ailure to furnish information which he knew or should have known to be material" or his "acceptance of a payment which he either knew or could have been expected to know was incorrect," among other things. 20 C.F.R. § 404.507. If the recipient is not without fault, then he is ineligible for a waiver—even if the agency also "may have been at fault in making the overpayment." *Id.*; *see also id.* § 416.552 ("The overpaid individual … is not relieved of liability … because the [SSA] may have been at

---

[3] Fitschen also cites the SSA's Program Operations Manual System (its internal operating manual), but the manual simply elaborates on the relevant statutory and regulatory framework. And as we've explained, Fitschen's argument misreads the statutory and regulatory framework.

fault in making the overpayment."). That's because a beneficiary's responsibility to repay overpaid benefits "is not punitive in nature" but is instead a recognition that a "mistake occurred" and the recipient "has to make the public fisc whole." *Watson v. Sullivan*, 940 F.2d 168, 172 (6th Cir. 1991).

The Commissioner found that Fitschen was at fault for the overpayment and on that basis denied his request for a waiver. To repeat our deferential standard of review: we must uphold the Commissioner's decision if substantial evidence supports it and no error of law occurred.

Fitschen identifies no legal error. And the Commissioner's finding of fault is amply supported by the evidence. First, and most obviously, Fitschen *twice* explicitly acknowledged his own fault. In his 2007 sworn statement to his local SSA office, he admitted that he knew that he was not entitled to the disability benefits he was receiving. And in his 2010 request for a hearing before an ALJ, he wrote that because the "SSA and myself are responsible for the overpayment, there should be a meeting somewhere to resolve the situation."[4]

If more were needed, the record reflects that the SSA repeatedly reminded Fitschen of the rules for working while receiving benefits as well as his obligation to immediately report changes in his work activity. His retention of benefits payments and failure to report work changes after these repeated reminders is further evidence of fault.

---

[4] Fitschen objects that the Appeals Council did not make an express finding about his credibility. We're not sure why. His case did not require a credibility determination. His admissions of fault were in writing and obviously adverse to his own interests.

Fitschen insists that he *did* report his work activity, but that's only partially correct. He reported his work activity only twice: first during his trial work period when his earnings had no bearing on the continuation of benefits and again in June 2007 *after* the SSA specifically asked him for an account of his work activity during the second continuing disability review.

Fitschen also argues that his receipt of the annual recomputation notices made it reasonable for him to assume that he could keep his benefits checks despite his substantial gainful activity. On the contrary, the recomputation notices would have prompted a reasonable person to inquire further to determine why he was still receiving benefits checks while engaged in substantial gainful activity. Anyway, this argument essentially asks us to reweigh the evidence and substitute our judgment for the Commissioner's. That's not our role.[5]

Because substantial evidence supports the Commissioner's determination that Fitschen was at fault, there's no basis to vacate the agency's denial of his request for a waiver.

AFFIRMED

---

[5] Fitschen also cites *Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017), but his reliance on that case is entirely misplaced. *Casey* suggested in dicta that the benefits recipient there might have a "plausible" waiver claim based on the facts of that case. *Id.* at 330. But *Casey* did not involve the merits of the recipient's waiver request; the case concerned only whether the recipient had good cause for his failure to file a timely administrative appeal. *Id.* at 323–24.